PACIFIC INS. CO. (CATLETT v.). See Case No. 2,517.

----

## Case No. 10,647.

### PACIFIC INS. CO. v. CONARD.

[1 Baldw. 138.] 1

Circuit Court, E. D. Pennsylvania. April Term, 1830. 2

RESPONDENTIA BONDHOLDER — RIGHT TO MAINTAIN — TRESPASS FOR GOODS TAKEN — LEVY ON GOODS OF THIRD PERSON BY MARSHAL — RULE OF DAMAGES—EXPENSE OF SALE.

1. A person who holds goods in virtue of a respondentia bond, with an assignment of the bill of lading, may recover damages in an action of trespass against one who takes them unlawfully to the full value of the property, though it exceeds his debt due on the bond.

[Cited in Lynd v. Picket, 7 Minn. 184 (Gil. 128).]

2. If a marshal levies on the property of a third person, pursuant to instructions, without any abuse of his authority, he is liable only for the injury actually sustained.

[Cited in Watson v. Sutherland, 5 Wall. (72 U. S.) 79.]

[Cited in Pascal v. Ducros, 8 Rob. (La.) 112; Cleveland, C. & C. R. Co. v. Bartram, 11 Ohio St. 466.]

3. In such cases the rule of damages is the value of the goods, with interest from the time of taking them; or, if they are articles of merchandize, from the expiration of the usual term of credit on sales.

4. If an auction sale has become necessary in consequence of the levy, the plaintiff will be entitled to recover the expenses of such sale; also the amount of the premium for insurance against fire effected on the goods. But he is not entitled to recover for money paid counsel, or other expenses incurred in prosecuting the suit.

[Cited in Burr v. McEwen, Case No. 2,193; Jacobus v. Monongahela Nat. Bank, 35 Fed. 397.]

[Cited in Cleveland. C. & C. R. Co. v. Bartram, 11 Ohio St. 466.]

This and several other actions of trespass against the same defendant were tried at this term, the facts of which were the same. A number of questions of law were raised in the argument; but as they had been decided in former cases it is not deemed necessary to make a detailed statement of the case, or to notice the arguments of counsel. Vide [Conard v. Atlantic Ins. Co.] 1 Pet. [26 U. S.] 386; [Conard v. Nicoll] 4 Pet. [29 U. S.] 291; Atlantic Ins. Co. v. Conard, Case No. 627.

BALDWIN, Circuit Justice, charging jury (HOPKINSON, District Judge, had been counsel in the cause): In this case there are two questions for your consideration: (1) Whether the plaintiffs can sustain this action. (2) The amount of damages to which they are entitled. The facts of the case are few. On the 10th and 11th of July 1825 the plaintiffs advanced 60,000 dollars to Edward Thomson on his respondentia bonds. He shipped the money for Canton, took bills of lading, deliverable to his factor John R. Thomson, and assigned them to the plaintiffs. The money arrived safely, and was invested in the teas now in controversy. The teas were shipped on board of the ships Addison and Superior, which arrived in the Delaware on the 15th of March 1826, when, with their cargoes, they were levied on by the defendant by virtue of an execution, at the suit of the United States, against Edward Thomson. The teas in question were landed and deposited in the public stores, under the care of the custom house officer, where they remained until the fall of 1826; when, by an agreement made between the plaintiffs and the secretary of the treasury, they were delivered to them and sold under their direction for their account. Immediately on hearing of the levy, the plaintiffs, by their agent, offered to the collector to secure the duties, and demanded the teas. They were refused. On this state of the facts the counsel for the defendant contends that Edward Thomson remained the legal owner of the teas at the time of the levy; that the plaintiffs did not become the owners or the consignees thereof, or the agents of Thomson, so as to authorise them to enter the teas at the custom house according to the provisions of the thirty-sixth section of the revenue law, which he contends could only be made by Thomson himself. That he being indebted to the United States by bonds for duties unpaid, was, by the proviso of the sixty-second section of the law, prohibited from making an entry without the actual payment of the duties accruing, for

----

1 [Reported by Hon. Henry Baldwin, Circuit Justice.]

2 [Affirmed in 6 Pet. (31 U. S.) 262.]

which the United States had a lien until they were paid, and that therefore the plaintiffs not having offered to pay the duties on their demand of the teas from the collector, had no right to the possession of the goods, and cannot maintain this action.

Were this a question open for consideration, I should have no hesitation in saying that the whole transaction between Thomson and the plaintiffs made them the legal owners and consignees of the property purchased by the outward shipment, and that as such they had a right to enter the teas on securing the duties without being affected by the delinquency of Thomson at the custom house; as much so as if the shipment had been made in their own name, and on their own account. But it has not been left for me to declare the law in this case. It has been definitely settled by the supreme court in the case of Conard v. Atlantic Ins. Co. (decided at January term, 1828) 1 Pet. [26 U. S.] 386; and the case of [Conard v. Nicoll] 4 Pet. [29 U. S.] 291. The first of these cases was an action of trespass brought to try the right of property in the plaintiffs to teas shipped in the Addison and Superior, under circumstances in all respects agreeing with this case. The court decided that they were entitled to the proceeds of what had been sold under the agreement, being the owners and consignees by the agreement between them and Thomson, and the consequent acts. The second was a similar action brought for the same purpose, as well as the recovery of damages for levying on certain goods, and a quantity of teas shipped, and in all respects circumstanced like the present. The cause was tried before Judge Washington in this place, and resulted in a verdict and judgment for the plaintiffs, not only for the proceeds of the property which had been sold, but a large amount in damages. It was removed by writ of error to the supreme court, and the judgment affirmed. That case embraced every point material to the decision of this, and connected with the opinion of the court in the former case, leaves for you and the court no other duty than acquiescence in the well established principles which control the cause before you.

The right of property in the teas, which are the subject of this action, has already been settled by the judgment of this court in a former action between the same parties, and is conclusive on that point in this. But the defendant's counsel contends that in the case of Harris v. Denny [3 Pet. (28 U. S.) 292], decided at the last term of the supreme court, a principle has been settled which will prevent the plaintiffs' recovery. The case was this: James De Wolf, Jr., was indebted to the United States on duty bonds unpaid; goods consigned to him arrived in the port of Boston, which were attached by his creditors in Massachusetts by a writ in the hands of Denny, the sheriff. The marshal attached the same goods by process from the district

court, at the suit of the United States. At the time of the attachment by Denny, the plaintiffs offered to secure the duties, and demanded possession, which the collector refused. On an action by the sheriff against the marshal, the court decided that he could not sustain it, because the plaintiffs in the attachment were neither owners, consignees nor agents; that De Wolf continued the owner, and being delinquent on former bonds, had no right to enter the goods till payment of the duties; and that the plaintiffs, claiming only as creditors, had no right to the possession on the mere offer to secure them. This case has no bearing on the right of an owner or consignee to enter goods on offering to secure duties accruing. It was there declared that the United States had no lien on the goods for the amount due by De Wolf on other importations. It only decided that a mere creditor could acquire no right to the possession of goods so imported consigned to De Wolf, until the duties were actually paid. [Harris v. Denny] 3 Pet. [28 U. S.] 292; [Harris v. De Wolf] 4 Pet. [29 U. S.] 148. The authority of the two cases referred to, does not seem to me to be at all shaken by that of Harris v. Denny, and I am therefore clearly of opinion, that the plaintiffs have well established their right to maintain the present action for the recovery of damages for the seizure of the goods in question.

It is next alleged, that by the agreement of the 9th of October, and the acts accompanying it, the defendant is released from all claims for damages. The decision of this and the supreme court in the case of Conard v. Nicoll [supra], settles the reverse, and declares that damages may be recovered, notwithstanding this agreement. In this case, the defendant pleaded this agreement as a bar to this action: the court overruled the plea and rendered judgment for the plaintiffs, so that this question has already been settled, as a matter of law, and is not open for your consideration as one of fact.

The counsel for the defendant next contends, that the rule of damages in this case is furnished by the balance due on the respondentia bonds, after deducting the amount of the sales. This ground is assumed by considering the plaintiffs as mere mortgagees of the teas, an idea wholly inadmissible, after the two solemn decisions of the supreme court, each adjudging the legal right of property to be in the respective plaintiffs, as owners; and one of them awarding damages without any reference to the amount due on the respondentia bonds. These decisions are binding authority on this court, which must be governed by them to their full extent. We are not at liberty to say that the plaintiffs in those actions were legal owners, only to the extent of the debt due them by Edward Thomson. The entire property in the teas was vested in them, and this court has passed the same judgment as to those now in controversy. This action of

trespass would assume a singular aspect, if the plaintiffs could not recover damages to the amount of their property, which has been taken from them by the defendant on an execution against Edward Thomson, who had no legal property in these teas. Whether the plaintiffs can, in any event, be considered as trustees for him, his creditors or assigns is not material to inquire in this action. On this question of damages, we cannot settle accounts between trustees and cestui que trusts (if there can be such as to this property), who are no parties to this suit. It is enough for the plaintiffs to exhibit record evidence of their being the acknowledged legal owners. It necessarily results, from such ownership, that they are legally entitled to all the damages arising from its seizure and detention, and the right to damages must be commensurate with the right of property. Any other rule would introduce endless confusion and mischief. The plaintiffs then are before you as the legal owners of the teas, and with no legal impediment in the way of their recovery.

The next question for your consideration is the amount of damages which the plaintiffs are entitled to recover, as the legal owners of the teas. The rule which ought to govern juries, in assessing damages for injuries to personal property, depends much on the circumstances of the case. When a trespass is committed in a wanton, rude and aggravated manner, indicating malice, or a desire to injure, a jury ought to be liberal in compensating the party injured, in all he has lost in property, in expenses for the assertion of his rights, in feeling or reputation; and even this may be exceeded by setting a public example to prevent a repetition of the act. In such cases there is no certain fixed standard; for a jury may properly take into view, not only what is due to the party complaining, but to the public, by inflicting, what are called in law speculative, exemplary or vindictive damages. But when an individual, acting in pursuance of what he conceives a just claim to property, proceeds by legal process to enforce it, and causes a levy to be made on what is claimed by another, without abusing or perverting its true object, there is and ought to be a very different rule, if, after a due course of legal investigation, his case is not well founded. This is what must necessarily happen in all judicial proceedings, fairly and properly conducted, which are instituted to try contested rights to property. The value of the property taken, with interest from the time of the taking down to the trial, is generally considered as the extent of the damages sustained, and this is deemed legal compensation, which refers solely to the injury done to the property taken, and not to any collateral or consequential damages, resulting to the owner by the trespass. These are taken into consideration only in a case more or less aggravated. But where the party,

taking the property of another by legal process, acts in the fair pursuit of his supposed legal right, the only reparation he is bound to make to the party who turns out ultimately to be injured, is to place him, as to the property, in the same situation in which he was before the trespass was committed. The costs of the action are the only penalty imposed by the law, which limits and regulates the items and amount. In the present case, the defendant acted under the orders of the government, in execution of his duties as a public officer: he made the levy, but committed no act beyond the strictest line of his duty, which placed him in a situation where he had no discretion. The result has been unfortunate for him: he has taken the property of the plaintiffs for the debt of Edward Thomson, and must make them compensation for the injury they have sustained thereby, but no further.

It has long since been well settled, that a jury ought in no case to find exemplary damages against a public officer, acting in obedience to orders from the government, without any circumstance of aggravation, if he violates the law in making a seizure of property. In the case of Nicoll against the present defendant, Judge Washington instructed the jury that they might give the plaintiff such damages as he had proved himself to be justly entitled to, on account of any actual injury he had proved to their satisfaction he had sustained, by the seizure and detention of the property levied on, but that they ought not to give vindictive, imaginary or speculative damages. The affirmance of his charge makes it the guide for us, in this case. Our true inquiry then must be, what damages have the plaintiffs so proved themselves to be entitled to? There can be no doubt that they have a right to the value of the teas at the time of the levy, with interest from the expiration of the usual credit on extensive sales. You may ascertain the value from the sales made at New York or this place, in the spring of 1826; if, in your opinion, they afford evidence of their real value, or if you are satisfied from the evidence you have heard, that the seizure and storing of these teas had the effect of depressing the prices, you may make such additions to the prices, at which sales were actually made, as would make them equal to what they would have been had they come to the possession of the plaintiffs, at the time of the levy.

In marine trespasses the supreme court have, at different times, laid down the following as the rule of damages, in cases unaccompanied with aggravation. In [Murray v. The Charming Betsy] 2 Cranch [6 U. S.] 124, [Head v. Providence Ins. Co.], Id. 156, the actual prime cost of the cargo, interest, insurance, and expenses necessarily sustained by bringing the vessel into the United States. In [Del Col v. Arnold] 3 Dall. [3 U. S.] 334, the full value of the property injured or de-

stroyed; counsel fees rejected as an item of damage. [Arcambel v. Wiseman] Id. 306. In [The Anna Maria] 2 Wheat. [15 U. S.] 335, the prime cost of the cargo, all charges, insurance and interest. In [The Amiable Nancy] 3 Wheat. [16 U. S.] 560, the prime cost, or value of the property at the time of loss, or the diminution of its value by the injury, and interest. In The Lively [Case No. 8,403], the prime cost and interest. In [The Apollon] 9 Wheat. [22 U. S.] 376, 377, where the vessel and cargo are lost or destroyed, their actual value, with interest from the trespass. The same rule also as to the partial injury, when property has been restored, demurrage for the vessel, and interest; where it has been sold, the gross amount of sales and interest, with an addition of ten per cent, where the sale was under disadvantageous circumstances, or the property had not arrived at its place of destination. In [The Amiable Nancy] 6 Wheat. [16 U. S.] 559, a loss by deterioration of the cargo, not occasioned by the improper conduct of the captain, is not allowed. Probable or possible profits on the voyage, either on the ship or cargo, have in every instance been rejected. [The Apollon] 9 Wheat. [22 U. S.] 376, 377; [The Amiable Nancy] 3 Wheat. 552; [La Amistad De Rues] 5 Wheat. 18 [U. S.] 389.

In none of these cases do the court recognize an allowance for counsel fees now set up by the plaintiffs; but they all seem to concur in adopting a rule which excludes them. No good reason seems to be presented for a distinction between the compensation due to a party injured by a marine trespass, and one committed on land; neither do the judges, in delivering the opinion of the court, refer to such distinction as one existing. In the case of The Apollon [supra], Judge Story observes: "Such, it is believed, have been the rules generally adopted in practice, in cases which did not call for vindictive or aggravated damages." And it may be truly said, if these rules do not furnish a complete indemnification, in all cases, they have so much certainty in their application, and such a tendency to suppress expensive litigation, that they are entitled to some commendation on principles of public policy ([The Apollon] 9 Wheat. [22 U. S.] 379), and in almost all cases will give a fair and just recompense ([The Amiable Nancy] 3 Wheat. [16 U. S.] 561). In [The Amiable Nancy] 3 Wheat. [16 U. S.] 558, the court, in assigning their reasons for giving other damages in the case then before them, remark, that it was one of gross and wanton outrage, without any just excuse, and that, under such circumstances the honour of the country, and the duty of the court, equally require that a just compensation should be made to the unoffending neutral for all the injuries and losses actually sustained by him. The respondents in that case were the owners of a privateer, who were, as a rule of policy, held responsible for the conduct of the officers and men employed by them, but not to the extent of vindictive damages.

If the present were a case of marine trespass, I think there is no doubt that the damages could not exceed the value of the teas, and interest, if they had not been restored, or as the result has been a restoration, the injury done by the seizure, which would be the loss in the sales by the fall in the market, and interest for the detention: for there exist none of the matters of aggravation which have induced courts of admiralty to go further. It is in their sound discretion to allow or refuse counsel fees, according to the nature of the case, either as damages, or a part of the costs, as in the case of The Apollon; but by a late case, they were allowed as costs in a case where it was adjudged by the supreme court that no damages could be claimed. They form an item of costs in such courts, but not in courts of common law. It would be legislation by the common law courts, to order them to be taxed as costs. The expenses of prosecuting claims of the present description do not come within the principles established by the courts in causes of admiralty jurisdiction, but seem to be considered as extra damages, beyond the value and interest, where there is aggravation, but not otherwise.

I think it is a safe rule in common law actions of trespass, and can perceive no sound reason for holding a marshal to a harder rule of damage than a naval or revenue officer, or the owner of a privateer. The same principle ought to govern all alike; or, if any discrimination prevails, it should be in favour of the defendant who could use no discretion, but was bound to do the act which has exposed him to this action. The case of Woodham v. Gelston, seems to me to be based on this rule, and the damages recovered in that case were only such as related to the property. The marshal fees were for seizing and keeping possession of the vessel. On the restoration to the plaintiff, he paid them; they were a charge on the property, in the nature of storage or bailment. In sanctioning this item, the court seem to put it on the ground of its being a charge on the defendant, and having been paid by plaintiff, he was entitled to recover it back; but they say, if it had been a mere voluntary payment, a deduction would have been proper. The other items were for wharfage and ship keeping, which were disallowed because they were after the restoration. These were all the claims for expenses presented in that case, and they all attached to the property taken; none related to personal expenses in prosecuting the suit.

In declaring that voluntary payments shall be deducted, the court settled the principle as to the right to charge for the marshal's

fees. They held the jury to strict rules, for they struck out an item of compound interest allowed by the verdict. 1 Johns. 137, 138. On the principle of this case of Woodham v. Gelston, the charges of the auction sales are allowable, because such sale had become necessary, and the expenses thereof became a charge on the teas. Also fire insurance, which is a substitute for bailment, and the premium paid in place of storage. It is all important, that in matters of this kind, the principle which governs them should be fixed and uniform; if we once begin to diverge from the old line, it will be difficult to draw and define a new one with accuracy. It may be thought a hardship that the plaintiffs shall not be allowed their actual disbursements, in recovering this property; but the hardship is equally great in a suit for money lent, or to recover possession of land. They are deemed in law, losses without injury, for which no legal remedy is afforded.

I am therefore of opinion, that you cannot, in assessing damages in this case, allow any of the items claimed by the plaintiffs for disbursements; they being consequent losses only, and not the actual or direct injury to their property which they have sustained by its seizure and detention, for which alone they are entitled to recover damages in this case, it not being attended with any circumstance of aggravation on the part of the defendant. Had there been any such, a very different rule would have been applied, by reimbursing the plaintiffs to the full extent of all their expenses and consequential losses.

You will then carefully weigh all the evidence in the cause, and ascertain the true value of the teas, at the time of the levy, or when they could have come into market, by the rules of the custom house, if there had been no claim asserted to them by the United States, other than for the duties, with interest; deducting therefrom the net amount of sales, after payment of duties and charges of sales, the balance will be the amount to which the plaintiffs will be entitled. You will consider Mr. Conard as the only defendant. The government is no party to this suit, nor is there any evidence which justifies us in saying that they agreed to indemnify him. That must depend exclusively on the discretion of congress, who are bound by no pledge given by executive officers. You will have no reference, in making up your verdict, to the course which may, in any event, be taken there, on an application by Mr. Conard for relief. You will award to the plaintiffs such sum as you may think them entitled to receive from the defendant, according to the rules of law, without taking into view the supposed hardship on him. The plaintiffs' recovery is not to be one dollar less than their legal right, though it might ruin the defendant; nor one dollar

more, though you might think the public treasury would be opened for his relief.

A verdict was given for the plaintiffs, and the damages found were 42,591 dollars 58 cents. Judgment was rendered accordingly.

This judgment was affirmed on writ of error. 6 Pet. [31 U. S.] 262.