## A. HARRIS & FOX *v.* A. & L. FINBERG.

1. LIABILITY OF WIFE ON NOTE MADE BY HER.—The name of the wife being found on a promissory note conjointly with that of her husband, does not raise a legal presumption that she is, either jointly or severally, liable on it.

2. DAMAGES ON SEQUESTRATION—EVIDENCE.—It is error to admit evidence of damage resulting from the depreciation in the market price of goods seized under writ of sequestration, in the absence of any allegation in the pleadings that such special damage had been sustained; being an uncertain and not necessarily a natural or legal consequence of the seizure and detention, such damage must be specially pleaded.

3. CASES DISCUSSED.—Haldeman *v.* Chambers, 19 Tex., 52; Clardy *v.* Callicoate, 24 Tex., 173; Portier *v.* Fernandez, 35 Tex., 535; Seiling *v.* Gunderman, 35 Tex., 545; Stetson *v.* Le Blanc, 6 La., O. S., 270; Littlejohn *v.* Wilcox, 2 La. Ann., 620; 21 Ala., N. S., 496; 8 B. Monr., 51–160; Kirksey *v.* Jones, 7 Ala., 622.

4. SEQUESTRATION—BURDEN OF PROOF.—The fact that a plaintiff, who has caused goods to be seized under a writ of sequestration, has established his debt and the validity of a written lien, by which he was authorized to take possession of and sell the mortgaged goods in the event his debt was not paid, does not preclude the defendant from showing that the suing out of the writ was wrongful, by negativing, on the trial, the truth of the grounds on which it was issued; but it is incumbent on the defendant to make out by evidence a *prima facie* case that the suing out of the writ was wrongful, before the plaintiff can be required to disprove it.

5. SEQUESTRATION—MEASURE OF DAMAGES.—Where the suing out and levy of a writ of sequestration is malicious, exemplary damages may be awarded; where it is merely wrongful, without malice, actual damages only can be allowed; but in no case can the value of the defendant's time, while attending court, or any such incidental expense, be allowed as a proper element of actual damage. The establishment of any other rule would open a wide door for the admission of other expenses and losses incidental to the prosecution of rights in courts of justice, and would inaugurate a radical departure from the principles of the common law.

APPEAL from Anderson. Tried below before the Hon. M. D. Ector.

A statement of the complicated pleadings and numerous exceptions which marked the progress of this cause in the lower court will subserve no useful purpose. Everything necessary to a proper understanding of the opinion will be found referred to in it.

*Reagan, Greenwood & Gooch,* for appellants, in support of their position, that appellee could not introduce evidence of

the depreciation in the value of the goods after the levy of the writ for recovery of damages without plea to support the evidence, cited Armstrong v. Percy, 5 Wend., 535, to 538; Sedgwick on Dam., 764, 765, 768; Chitty on Pleading, vol. 1, 428; Sedgwick, (with reference to pleading and practice,) chap. XXIV, 574; also Mims v. Mitchell, 1 Tex., 443; Coles v. Kelsey, 2 Tex., 541; Hall v. Jackson, 3 Tex., 309, to 311; Towner v. Sayre, 4 Tex., 28, 29; Young v. Lewis, 9 Tex., 77; Roseborough v. Gorman, 6 Tex., 314. They also argued at length the proposition that the defendant below could not recover for his time spent in protecting his interest in court as an element of actual damage.

*T. T. Gammage,* for appellees, insisted that the evidence warranted the verdict in defendant's favor for the amount rendered, even after discarding from the estimate the item of depreciation in the value of the goods.

The owner of property seized under an attachment wrongfully sued out, is entitled to recover as damages the value of the use of his property while it is withheld from his control.

In the acts of the plaintiffs in suing out the writ consist the damages, and the plaintiffs are liable. (Punchard v. Taylor, 23 Tex., 424.)

The motion for new trial in this case should have been, and was, properly overruled. (3 Gr. & Wat. on New Trials, secs. 1144, 1145, 1146; McGehee v. Shafer, 9 Tex., 20; Cole v. Tucker, 6 Tex., 266; Barnette v. Hicks, 6 Tex., 352.)

In the case at bar the plaintiffs have taken quite a number of bills of exceptions, and assigned lengthy assignment of errors, but I conceive there is but one question in the whole case: was the writ of sequestration wrongfully sued out? The testimony answers the question in the affirmative; the jury answered the question in the affirmative; and the presiding judge, in overruling the motion for new trial, answered the question in the affirmative. I respectfully ask that the judgment be affirmed.

6

ROBERTS, CHIEF JUSTICE.—Appellants, who were plaintiffs below, brought suit against appellees on three notes, payable at the office of M. Ash, in Palestine, Texas, amounting to $1,438.20, two of which were due, and the other, falling due during the pendency of the suit, was also declared on. They also sought to foreclose a mortgage, executed by defendants 16th of August, 1873, upon a stock of goods that had been given to them by defendants to secure the punctual payment of said notes as they fell due, in which it was stipulated that "said Harris & Fox, or their agent, Michael Ash, are authorized and hereby empowered to take possession of said stock of goods, or so much thereof as may be necessary, and sell the same at private sale, or to sell the same at public auction, at discretion, first giving notice, if a public sale, in the 'Trinity Advocate,' for ten days, of the time and place of sale of said goods," the proceeds thereof to pay the necessary expenses, "and the residue to be applied to the payment of said debts as they become due." The stock of goods was estimated in said mortgage to be of the value of six thousand dollars, and the debt which it was given to secure was therein stated to be fifteen hundred dollars.

Plaintiffs sued out a writ of sequestration, upon the ground that they feared that the defendants would "waste and remove from Anderson county their stock in trade now in their possession," the affidavit for which was made by Henry Fox, one of the firm, for Harris & Fox, and which writ of sequestration was levied upon the stock of goods as the property of defendants, A. & L. Finberg, an inventory of which goods was made, with a valuation amounting to $4,317,41, by the sheriff, constituting a part of his return. The petition was filed the 22d day of January, 1874, and the writ was issued and levied on the 24th day of the same month.

Plaintiffs alleged that on the 21st of January, 1874, at Palestine, Texas, Henry Fox and M. Ash demanded of defendants payment of the notes due, and the possession of said stock of goods, both of which were refused.

The exhibits, made part of this petition, showed that L. Finberg was the wife of A. Finberg. If exceptions had been sustained to it, so far as it claimed a judgment against her on the notes, because there were no facts stated showing her liability on them, it might have simplified the subsequent proceedings, by requiring the plaintiffs to state such facts or abandon their said claim as against her; for a wife's name being found on a note conjointly with that of her husband, does not raise a legal presumption that she is either jointly or severally liable upon it. To remedy this defect, it was afterwards stated in the pleading of plaintiffs that the goods for which these notes were given were purchased for the benefit of her separate property. This was after she had pleaded her coverture, and that the stock of goods levied on was her separate property, and also in reconvention for damages for the wrongful and malicious suing out and levying of the writ of sequestration upon her stock of goods. All of the questions arising upon the claim made against her in the petition and upon her pleas are immaterial in the consideration of this case, from the fact that there was no verdict and judgment either for or against her.

So the pleas of A. Finberg, that the mortgage was procured by fraud and moral duress, and in reconvention for damages for the malicious suing out and levy of the writ of sequestration, present no material question, because the finding of the jury excludes their consideration as the case is now presented here.

Under the pleadings, evidence, and charge of the court, the jury returned a verdict in favor of the plaintiffs against A. Finberg, on the notes, for the sum of $1,491.21, and a mortgage lien upon the stock of goods levied on, and the same to be the community property of A. Finberg; and in favor of A. Finberg against the plaintiffs, for the sum of $2,620, as actual damages for the wrongful suing out of the writ of sequestration; upon which a judgment was rendered for A. Finberg against the plaintiffs, for the sum of $1,128, the dif-

ference between said amounts, as damages aforesaid, and for a·return to A. Finberg of the goods levied on.

As the plaintiffs, in appealing from this judgment, have not complained of the finding of the jury upon the notes and mortgage, nor of the jury not having found in their favor against Mrs. L. Finberg, the questions for our consideration are narrowed down to the errors in the judgment in favor of A. Finberg (substantially for the sum of $2,620) for damages for the wrongful suing out of the writ of sequestration. Upon this verdict coming in, the plaintiffs moved the court for a judgment, notwithstanding the finding in favor of A. Finberg in his cross-action for damages. This presented the question, whether or not the suing out of the writ of sequestration could be wrongful if, as shown by the verdict, the plaintiffs had established their debt and mortgage lien upon the goods levied on. The court overruled this motion, which is assigned as error. Another assignment of error is to the charge of the court upon the measure of actual damages applicable to a case of the wrongful suing out of the writ of sequestration, as follows, to wit:

"If the testimony in this case authorizes it, the following would be proper rules for measuring this actual damage, the goods not having been replevied:

"1. Legal interest, eight per centum per annum, upon the value of the stock of goods levied upon and held up by the sequestration from date of levy to this date, which was from 24th January, 1874, to the 19th of August, 1875.

"2. The damage, if any, in the value of the same, by means of age or otherwise, from having been held up by the levy.

"3. If not included as laid down in rule 2, then the depreciation, if any, in the fair market value of the goods held up and levied upon by said writ of sequestration, as compared with the fair market price at the date of said levy.

"4. If any of said goods were shown to have been sold by order of the court as perishable property, at less than the fair

market price, then the difference, if any, between this fair market price and the sale price.

"5. You may include, also, in making up your verdict for actual damage, if any, the value of the time of defendant, A. Finberg, in attendance upon the court in this case."

Counsel for plaintiffs make no objection to the first and second ground of actual damage, being for interest on the value of the goods, and the deterioration in quality or damage resulting from age by being kept over, the first being a legal consequence, and the second being a proper subject of special damage, and being alleged and claimed in the answer of A. Finberg. (Wallace & Co. *v.* A. & L. Finberg, decided at this term.)

The objection to the 3d ground of damage in this charge for the depreciation in the market price is, not that it might not have been a good ground of special damage, but that it was not alleged in the answer, and on that account the evidence offered to prove it was objected to, as appears in a bill of exceptions in the record. After the most diligent search, no such allegation has been found in the answers of A. Finberg; and without it being alleged as a ground of special damage, there could be legally no recovery for it. The property seized and detained, being goods for sale by retail, would be likely to deteriorate by age, by being held over for a year, though they might not for a week or a day; or property seized might be such as would not deteriorate at all, as might be the case with land or other property. Being, therefore, a ground of damage, uncertain, and not necessarily a natural or legal consequence of the seizure and detention, it must be alleged as a ground of special damage to justify a recovery. The depreciation in the market value of such articles is a more uncertain fact, and therefore the more necessary to be alleged as a ground of special damage. (Wallace & Co. *v.* A. & L. Finberg, decided at this term.)

As to the 4th ground in the charge, having reference to the allowance of the difference in the price for which a portion

of the goods sold below their valuation by the sheriff, the evidence on that subject was objected to, as appears by a bill of exceptions. A. Finberg alleged in his answer that they did not sell for half of their value. The ground of objection to the evidence by the plaintiffs was, that they were ordered to be sold in the suit of Wallace & Co. v. A. & L. Finberg, in which an attachment was levied on the same goods by the sheriff. It appears that a part of the goods was ordered to be sold, as perishable property, at the instance of the sheriff, which proceeding was in the case of Wallace & Co. v. A. & L. Finberg, by the evidence before the jury in this case. After the sale on the 14th May, 1874, the sheriff returned a sale of goods amounting to $879.18, and after deducting expenses on said property ($206.88) there was left $672.30, which, by order of court, was deposited with the District Clerk, to abide the decision of the court in that cause. It does not appear by any pleading or evidence in this case why said goods were sold by an order in the case of Wallace & Co. v. A. & L. Finberg. They were levied on by the sheriff, under the writ of sequestration, as appears by his return on it in this case. It does not appear that they were ever relieved from said levy, and it is not perceived why defendant should prove, as an element of damage, that they brought twenty per cent. less than they were appraised at when levied on, as he did, by the sheriff. We have no means of ascertaining the pertinency of such evidence in this case.

The 5th ground of error in the charge was, in allowing A. Finberg compensation for the value of his time in attending court in this case. A. Finberg alleged that he had attended court in this case over one hundred days, and that his time so spent was worth five dollars per day, which he proved, on the trial, by his own evidence. Plaintiffs objected to this evidence, as not relating to a proper subject of actual damage, which appears in a bill of exceptions, and its admission, as well as the charge relating to it, is assigned as error.

This question, then, the allowance to a party litigant com-

pensation for his time in attending court, and that first referred to, the right of the defendant to recover damages for the wrongful suing out of a writ of sequestration, in a case where the debt and lien on the goods levied on are established, remain to be considered.

First, as to the right of defendant to recover damages. But little light has been thrown upon the subject by decisions in our Supreme Court in cases of seizure by a writ of sequestration, and none in cases where a lien in the nature of a mortgage, with power to take possession and sell the goods, is given.

The case of Haldeman *v.* Chambers was one in which a writ of sequestration was sued out and levied on land in a suit for specific performance upon a title bond, and in which defendant claimed damages in reconvention for the unjust, vexatious, and oppressive use of the writ. No damage was allowed, and defendant complained of it to the court, on appeal. This would seem to be a suit for a malicious prosecution of the suit and issuing of the writ of sequestration, rather than for the wrongful suing out of the writ. There were a number of important questions in the case upon which more attention was bestowed than upon this. Justice Wheeler, in delivering the opinion, says: "Without deeming it necessary to determine whether the case presented in the answer was such as would entitle him to maintain an action for damages, we are of opinion that the court did not err in declining the award. It may be a question whether, in consenting to waive a jury, the defendant is not to be deemed to have waived his right to claim a judgment for unliquidated damages." Upon a rehearing, the same learned judge, in an elaborate discussion of the subject of the malicious suits wherein damages have been allowed, concludes, in substance, that plaintiff acted in good faith, and not upon malice, in bringing the suit, and that defendant had suffered no injury by the suing out of the writ, he having been "subjected to no inconvenience in giving the required bond and security." (Haldeman *v.* Chambers, 19 Tex., 52.)

That was evidently not a case similar to this, as we are now considering it. In the case of Clardy *v.* Callicoate there was a reconvention for damages when a writ of sequestration was sued out, but the only question decided was, that the opinion of a witness, as to the amount of damage done by it, was inadmissible. (24 Tex., 173.) So in the case of Portier *v.* Fernandez, the only question was the dismissal of parties not necessary to be joined as defendants. (35 Tex., 535; see also Seiling *v.* Gunderman, *ib.*, 545.) The only significance of these cases in connection with this case is, that there has been no question raised disputing the right of the defendant to reconvene for damages when a writ of sequestration is sued out as well as when a writ of attachment is sued out.

In Louisiana, a defendant, in a suit brought against him to recover personal property, in which a writ of sequestration was sued out and levied, in which plaintiff failed to establish his right to the property sued for, was allowed to bring an action to recover damages for the wrongful suing out of the writ of sequestration. (Stetson *v.* Le Blanc., 6 (O. S.) La., 270.) In that State, as in this, a writ of sequestration may may be sued out in foreclosing a mortgage. (Bres *v.* Booth, 1 La. Ann. R., 307.) None of these cases in either State, and none that have been found, are similar to this, where there is a suit to foreclose a mortgage lien in which there is a power to take possession and sell the goods to satisfy the debt and expenses.

Counsel for plaintiffs contend that, as they had a right to take possession of the stock of goods and sell them, it cannot be held to be wrongful to use the process of the court so as to require the sheriff to do the same thing for them. This is stating a case plausibly, but it may not be exactly their case, and all of it.

By the terms of the instrument it was evidently intended that the defendants should remain in possession of the goods, and continue to sell them in the regular course of trade as merchants until default of payment, as the notes become due.

which we may presume from the amount of goods and size of the debt, in installments, was hardly expected by the contracting parties to happen. It was designed as a lien, a preferred security for a debt resting on the stock of goods in the course of trade.

It could not have been contemplated that the plaintiffs, upon default of payment, would take possession of the stock of goods by force of arms, if defendants refused to deliver the goods or enough of them to satisfy the debt by their sale according to their implied contract. The plaintiffs could not make a complete valid sale of the goods, either privately or publicly, without first getting possession of them, so as to deliver them to the purchaser or purchasers. Leaving the goods in the possession of the defendants, to be dealt with in the ordinary course of trade, entailed on the plaintiffs the necessity of resorting to a suit in court for a recovery of the possession of the goods, or for the foreclosure of the lien. The power to take possession, as provided for in the contract, without suit, was subject to the condition of delivery on the part of defendants. That failing, the power fell, as though it had not been, and that was the legal consequence of terms of the contract itself, in leaving the defendants in possession of the goods, dealing with them as their own. If, on the other hand, the plaintiffs brought their suit to foreclose the lien, without first having demanded the goods for the purpose of executing their power personally, as it has been held by this court they may do, (Morrison *v.* Bean, 15 Tex., 269,) they thereby waived any benefit under it, and must proceed as though no such power had been conferred.

In either event, then, the power to take possession of and sell the goods to pay the debt can confer no greater right and furnish no greater protection to the plaintiffs in this suit than if it had been left out of the instrument.

Treating it, then, as an ordinary mortgage lien, our State provides for issuing a writ of sequestration to seize mortgaged property, upon the affidavit of the party applying for the

same, that he fears the defendant will waste the property or remove it out of the county, and giving a bond with sureties in double the value of the property sequestered, conditioned to pay the defendant all such damages as may be awarded against him in case it shall be decided that such sequestration shall be wrongfully sued out. (Paschal's Dig., arts. 5095a, sec. 1, and 5096.) This is similar, though not exactly the same in terms, to the affidavit and bond in original attachments. (Paschal's Dig., arts. 142, 163.)

We may regard writs of sequestration and of attachment as standing on a similar footing, in regard to the rights of the defendants to recover damages for the wrongful suing out of them in this State, when used as auxiliary writs under the statute to seize and secure property, at least sufficiently so, to authorize us to look to the precedents in attachment cases. The fact, then, that the plaintiffs in this case have established their debt and the validity of their lien upon the goods sequestered, does not preclude the defendants from establishing that the suing out of the writ was wrongful, by negativing on the trial the truth of the ground upon which it was issued, as required in the affidavit, which was, that the party applying for it feared that the defendants would waste and remove out of the county the property mortgaged. This the court required the defendant to do. And it was certainly incumbent on the defendant to make out a *prima facie* case by evidence before the plaintiffs were required to disprove it. (Offut *v.* Edwards, 9 Rob. (La.) Rep., 94.)

The next question: Was there error in the charge of the court upon the 5th ground, in instructing the jury that they might allow, as actual damages to the defendant, A. Finberg, the value of his time while he was attending court in this case? This would surely be a very uncertain measure of damages to be imposed upon the plaintiff. One man's time might be worth ten times as much as that of another; and if the value of his time should be given, equally, it would seem,

might his expenses of board and lodging, which would be
different with different persons, in different places; so, too,
his counsel fees would be equally as necessary an expense.
Usually, in litigated cases, it is necessary and proper that a
party should attend court, and also employ counsel to attend
to his case; and he must generally sustain the loss of much
valuable time and incur personal expenses, as well as pay his
counsel fees. They are all losses of the same kind, inci-
dental, and often onerous when the litigation is protracted.
The allowance of this kind of loss would certainly produce
great inequality in the amounts given for the same wrongful
injury inflicted in different cases of the same character, de-
pendent not upon the case itself so much as upon the parties
concerned in it, and the locality where the suit was brought.
It is unequal in another respect, as between the parties liti-
gant. For suppose that, after a protracted and expensive
litigation, it is established that the issuing of the writ was not
wrongful, and the plaintiff fully maintains his action in every
respect: he gets no compensation for his time and expenses
beyond the costs of suit, however much they have been, or
however groundless the cause of action on the part of the
defendant, whose unjust effort to obtain damages has mainly
caused them to be incurred.

Mr. Drake, in enumerating the grounds of actual damage
in such suits, includes "expense and losses incurred by the
party in making his defense to the attachment proceeding."
Under this head he specifies expenses incurred in obtaining
testimony on a trial (where such is by law authorized) of the
truth of the affidavit on which the attachment was issued,
costs of suit to which defendant has been subjected, and fees
paid to counsel in the attachment suit, but not fees to coun-
sel for services in the action for damages. And he adds,
"Where the attachment is not the original process, but is in
aid of or auxiliary to an action instituted by ordinary process,
no costs connected with the suit, in aid of which the attach-
ment is obtained, can be recovered." (Drake on Attach.,

secs. 175–176.)   He does not mention the value of a party's time in attending court in the case.   If he had, this case is relieved by the conditions or qualifications which are annexed to his propositions; because in this State the facts stated in the affidavit for attachment are not allowed to be controverted for the purpose of dismissing the writ, as it is done in Louisiana.   (Van Winckle *v.* Flecheaux, 12 La., (O. S.,) 148.)

An original attachment, as well as sequestration, is an auxiliary process here, and the latter has never been used in this State as a means of bringing a party into court by and through his property seized, as has been the case with the writ of attachment in some States.   Justice Chilton says, on this subject, "the costs in defending the suit in which the ancillary attachment was sued out, the plaintiff in that suit having failed, has no connection with the attachment;" and gives as a reason that its object was only to fix a lien upon property—the facts in the affidavit could not be contested, and therefore no cost could be incurred by the defendant in that suit in disproving them.   (White *v.* Wiley, 17 Ala., 169.) Furthermore, the reconvention for damages, or cross-action of defendant in this case, stands in the place of the action for damages, in which it is said, by Mr. Drake, counsel fees cannot be allowed.   (Offut *v.* Edwards, 9 Rob., (La.,) 90.)

These rules of Mr. Drake are not the result of a deduction from principle, as applicable to the measure of actual damages, but they are an announcement of what has been said or decided in a number of cases, to which he refers, being, perhaps, the most favorable to a liberal allowance of actual damages of any that can be found, if, indeed, they can be regarded as decisions under that head.   The leading case upon which he bases his rules for actual damage is the one last cited from Louisiana, where the civil law prevails.   In that case the ground of action for the recovery of damages, as alleged, was the "vexatious and oppressive" proceedings of the plaintiff in the suing out and levy of an attachment

upon the property of defendant in a previous suit. "No exception was made to the demand in reconvention." The sum of five hundred dollars was given as damages. The Supreme Court, in reversing the case, upon the sole ground of excess in the damages awarded, in explanation of the reasons for doing it, say: "About sixty barrels of corn are said to have been destroyed, worth fifty cents per barrel. [Flour barrel of corn in the shuck is, perhaps, meant.] Not more than four of the slaves seized could render any service. They were detained about twelve days, and the highest estimate set upon their services is ten dollars per month. The defendant was obliged to come twice to the court house, a distance of about twenty-five miles from his residence, to get his slaves released, and had to give security. For his losses and trouble he should be liberally remunerated. He would also, probably, be entitled to recover what he may have paid for professional services of counsel engaged to aid him in dissolving the attachment, (which could be done upon proof of facts negativing the ground for suing out the attachment;) but in estimating them, the jury should not take into consideration the services of counsel in prosecuting the claim for damages, which, we think, was probably done in this case."

Further on it is added, that, "in this case we are unable to discover any malicious motive in the plaintiff. He hastily resorted to a harsh but legal remedy, without sufficient cause, and he should pay for it; but in assessing the damages, the jury should be careful not to have made him a victim of one of the parties in their efforts to rescue and indemnify the other." In that case, there was no reference to the attachment bond as a ground of suit, and it was evidently a suit for the malicious suing out and levying of an attachment, in which exemplary damages might have been recovered, and not a suit for the wrongful suing out of an attachment, in which actual damages alone could be awarded.

In another case, cited from the same State, a suit was brought, and an attachment was sued out, and afterwards

abandoned. It was brought, as the plaintiff said, to try a question.

The defendant afterwards brought a suit on the attachment bond, and the Supreme Court held that counsel fees should have been allowed, which were paid for defense against the attachment, but say nothing about the value of the time, or expenses otherwise of the defendant in the attachment. It is obvious that this decision was made without reference to any particular distinction between the malicious and the wrongful suing out of the attachment. In the opinion it is said, "suitors who try experiments, without hope of success, and who do not prosecute them, must take the consequences. They cannot be considered in good faith, and the rule of damages applicable to them is peculiar." What made the peculiar rule applicable to the case was the want of good faith—a suit by attachment without probable cause, which is one of the elements of a malicious prosecution. (Littlejohn *v.* Wilcox, 2 La. Ann. Rep., 620.)

In a case in Alabama, which is cited by Drake, a suit was brought for the wrongful suing out of an attachment. The Supreme Court, after determining to reverse and remand the case on another point, said, in reference to another trial: "In Marshall *v.* Betner, 17 Ala., 832, we held that when malice is the gist of the action, and vindictive damages recoverable, counsel fees reasonably and necessarily incurred might be proved and considered by the jury in the assessment of damages; but we see no just or sound reason why the consideration of these expenses, in the estimation of damages by the jury, should be confined to cases of malice." The opinion proceeds to reason to this conclusion by the analogy of a physician's bill, incurred by the injured party, being allowed as damages against a wrongdoer. (21 Ala. (N. S.) Rep., 496.) In none of these cases are there any precedents cited as having previously established the rule announced.

We regard these as extreme cases, not in harmony with the common law, which prevails in this State, as applicable

to an action for the wrongful suing out of an attachment or sequestration.

In States where the suit for damages and that in which the attachment is sued out are separate suits, and not joined, as they may be in this State, it is generally held that the costs incurred by the defendant, on account of the wrongful attachment, may be recovered by him in the damage suit. (Dunning v. Humphrey, 24 Wend., 30.) This has reference to the costs of court. As the writs of sequestration and of original attachment are auxiliary processes only, and there can be no contest as to the grounds of the attachment or sequestration except by motion to dismiss it, the costs incurred on account of the issuing of the writ would usually not amount to much; and in cases of reconvention for damages in this State, the attachment or sequestration suit, and the reconvention for damages, both being usually in the same suit, no notice has been taken of this as an item of damage.

Apart from the cost, the proper rule for the measure of damages for the wrongful suing out of the writ is laid down by the Supreme Court of Kentucky, as follows: "The inquiry in regard to the injury which the party may sustain by the deprivation of the use of his property should be limited to the actual value of the use; as, for example, the rent of real estate, the hire or services of slaves, or the value of the use of any other species of property in itself productive. The property in this case was not of that character, and the injury from being deprived of its use should be restricted to the interest on the value thereof. If, however, the property is damaged, or if, when returned, it should be of less value than when seized, in consequence of a depreciation of price, or from any other cause, for such difference the plaintiff would be entitled to recover. For any injury beyond that, the damages would be conjectural, indefinite, and uncertain, and the plaintiff cannot recover in this action. But this rule, as to the depreciation of the price, would not be applicable to every species of property. It would, however, apply in this

case, as it was the trade and business of the party to vend the goods attached, and not to keep them for mere use." (8 B. Monr., 51; Heath v. Lent, 1 Cal., 411.)

This has been quoted at length, to show that it excludes any such ground of damage as that now under consideration.

A number of suits of similar character have been before the Supreme Court of this State, and, in deciding them, the court has repeatedly announced, that where the suing out and levy of the writ is malicious, exemplary damages could be awarded, and where it was only wrongful, without malice, actual damages only could be awarded. In none of them has it been defined what losses and expenses are embraced under the head of actual damage, nor the exact limitations of what may be allowed as such. But it is believed, that in none of them has the value of the defendant's time, while attending court in the case, or any such incidental expense, been allowed or sanctioned as a proper element of actual damages. (Walcott v. Hendrick, 6 Tex., 406; Peiser v. Cushman, 13 Tex., 390; Wiley v. Traiwick, 14 Tex., 662; Castro v. Whitlock, 15 Tex., 437; Haldeman v. Chambers, 19 Tex., 52; Reed v. Samuels, 22 Tex., 114; Punchard v. Taylor, 23 Tex., 424; Clark v. Wilcox, 31 Tex., 331; Clardy v. Callicoate, 24 Tex., 173; Portier v. Fernandez, 35 Tex., 535.)

More than usual attention has been given in this opinion to this point, because, if the pay be allowed a party for his time in attending court, it opens a wide door for the admission of other expenses and losses incidental to the prosecution of rights in courts of justice, and will inaugurate a radical departure from the principles of the common law. It is a principle that pervades the whole system of English jurisprudence, that the laws are to be enforced by the aid of the people, as jurors, witnesses, and parties in court asserting their rights, to be performed as a public duty, and the law does not undertake to compensate for all losses and expenses incurred in the performance of such public duty. Under

this principle, each litigant paid his own costs of court originally, and this was, changed by statutes giving costs in certain actions, until it became general.    Criminal actions, even, would rarely be prosecuted, unless some one came forward and assumed the responsibility of being a prosecutor in the case, generally without compensation in any event.

Originally, also, no damages could be recovered against a party for bringing a civil action, however unfounded.    Lord Camden said: "There are no cases in the old books of actions for suing, where the plaintiff had no cause of action.    But of late years, when a man is maliciously held to bail, where nothing is due, or when he is maliciously arrested for a great deal more than is due, this action is held to lie, because the costs in the cause are not sufficient satisfaction for imprisoning a man unjustly, and putting him to the difficulty of getting bail for a larger sum than is due."    (Goslin *v.* Wilcox, 2 Wils., 302–305; Haldeman *v.* Chambers, 19 Tex., 54.)

Upon this principle it has been held in this and other States, that a malicious suing out and levying upon property under the extraordinary writs of attachment and sequestration, without probable cause, gave a party injured by it an action for damages; and because, in obtaining such writs, it was required by law that a bond should be given to pay such damages as might be sustained for the wrongful suing out of the writ, an action was given by force of the statute, which would not exist at common law, for the wrongful suing out of the process, in which only the actual damages could be recovered.    (Kirksey *v.* Jones, 7 Ala., 622; Petit *v.* Mercer, 8 B. Monr., 51; Senecal *v.* Smith, 9 Rob. La. Rep., 420.) That is, the wrongful suing out of the writ became a cause of action, whereas it was not before at common law.    It is in the nature of an action on a covenant or contract (whether the suit is brought directly on the bond or not) for the recovery of actual damages—legal compensation for the legal injury.    In reference to such cases, Mr. Sedgwick enumerates the various losses and expenses that may be incurred in

7

the prosecution or defense of a suit in court, and refers to the distinction between those allowed as legal compensation for the injury and those not allowed, concluding as follows: "The law in fact aims not at the satisfaction, but at a division of the loss. And it is to be borne in mind that the same deficiency of compensation exists in case of defendants as well as plaintiffs. If the party who receives the injury is obliged to bear his part of the loss, so, on the other hand, the party wrongly charged only recovers his costs, and no allowance is made for his time, indirect loss, annoyance, or counsel fees." (Sedg. on Dam., 35, 38.)

There are other important questions in this case, though not now necessary to be decided. The transcript of the record contains two hundred and eighty-two pages, one hundred and fifty-eight of which are filed with the pleadings of the parties, each party having filed fifteen distinct pleadings, embracing motions, exceptions, petition and amendments, pleas and amended pleas, presenting, with many repetitions, facts, law, argument, history, and perhaps something more. Before submitting the case to the jury, the court made seventeen distinct decisions upon the exceptions to the pleadings, all of which rulings were excepted to. There are twelve separate bills of exceptions, and fifteen distinct grounds of error assigned. Such a multiplicity of pleadings and the consequences flowing from it, not necessary to be mentioned, could hardly have been anticipated by the founders of our system of pleading and practice, who, it seems, supposed that by confining pleadings to petition and answer they would avoid the subtilties and technicalities of the common law. It is not surprising, under such circumstances, that the judge and jury, in their action, should not reach either the law or the justice of the case.

For the error of the court in the charge, in allowing, as actual damage, the value of the time of defendant, A. Finberg, while attending to this case in the District Court, and the depreciation in the price of goods, it not having been

alleged in the pleadings, the judgment is reversed and cause remanded.

Reversed and remanded.