## COULSON v. PANHANDLE NAT. BANK et al.

(Circuit Court of Appeals, Fifth Circuit. February 6, 1893.)

### No. 89.

1. ATTACHMENT—PROCEDURE—TEXAS LAW.
   Rev. St. Tex. arts. 167, 2292, providing for the levy of attachment and execution on property where defendant has an interest, but to the possession of which he is not entitled, by service of notice upon the person who is entitled to possession, does not apply to a defendant who is a joint owner of a flock of goats, and has possession thereof. In such a case the proper method of levy is by taking possession of defendant's half interest. Brown v. Bacon, 63 Tex. 597, and Clagett v. Kilbourne, 1 Black, 346, distinguished.

2. SAME—MEASURE OF DAMAGES.
   Where a flock of goats is unlawfully seized upon levy of attachment without malice, and subsequently returned after being clipped, there being no evidence to show that the flock had any usable value beyond the clipping of mohair, which was far short of the expense of keeping, nor that the goats depreciated in value during such detention, an instruction that the proper measure of damages is the lawful interest on the value of the flock from the time of seizure until it was returned is not prejudicial to the owner.

3. SAME—IRREGULARITY OF SALE.
   The purchasers of a half interest in a flock of goats executed a deed of trust to secure the payment of the purchase money, authorizing the trustee to take possession and sell the goats at public auction at the courthouse door, "or in the place where said goats may be located when the said trustee takes possession." To save expense the trustee sold the goats at the courthouse door, without taking them into possession, or having them at the place of sale. There was no evidence that a fair price was not obtained, or that the owners were in any wise damaged by this method of sale. *Held*, that this irregularity rendered the sale voidable, not void, and was immaterial in a suit by a joint owner for damages for a prior seizure of the flock; for the voidable character of the sale can be asserted only in a direct suit for the purpose, wherein plaintiff offers to do equity with regard to the proceeds applied to his use.

In Error to the Circuit Court of the United States for the Northern District of Texas.

At Law. Action by J. C. Coulson against the Panhandle National Bank and F. M. Davis for damages for the unlawful seizure of a flock of goats. Verdict for plaintiff, who, being dissatisfied with the damages, moved for a new trial. The motion was overruled, and judgment entered. Plaintiff brings error. Affirmed.

M. L. Crawford, for plaintiff in error.
Seth W. Stewart, for defendants in error.

Before PARDEE and McCORMICK, Circuit Judges, and LOCKE, District Judge.

PARDEE, Circuit Judge. This action was commenced by the plaintiff in error against the defendants in error in the United States circuit court for the northern district of Texas to recover damages, actual and punitory, for the alleged wrongful seizure and conversion of a certain flock of Angora goats, alleged to have been the property

of the plaintiff. The facts of the case sufficiently appear from the bill of exceptions, as follows:

"Be it remembered, that on the trial of the above-entitled cause the plaintiff, J. C. Coulson, offered evidence tending to prove that Bessie Maddox was his sister, and the wife of S. S. Maddox; that in January, 1886, John and Andrew Nelson, by bill of sale in writing, sold to J. C. Coulson and Bessie Maddox 1,548 Angora goats for $6,000,—$1,000 cash, $1,000 in four months, and $4,000 in twelve months. The deferred payments were secured by deed of trust upon the goats, which deed of trust and notes were executed by J. C. Coulson and Bessie Maddox, the husband, S. S. Maddox, not joining in either paper. There was testimony tending to show that all the money was paid by Coulson, and that Mrs. Maddox was to have an interest in the flock in proportion to the amount of the purchase money paid by her or her husband. The evidence also tended to show that the plaintiff, Coulson, through his agents, had the exclusive possession and control of the entire flock of goats. The evidence also tended to show that on the 21st of October, 1886, Bessie Maddox, joined by her husband, S. S. Maddox, by writing, conveyed to J. C. Coulson all of their interest in the flock of goats, and that the written conveyance was in execution of a verbal agreement so to do, made some months before the date of the instrument. The evidence also tended to show that the instrument was not recorded until May 23, 1892, and was not intended by the parties as a conveyance of any interest in the flock of goats, but merely to cancel and annul the agreement made between Mrs. Maddox and Coulson when the goats were purchased from Nelson, by which Mrs. Maddox was to have an interest in the flock in proportion to the amount paid by her, or her husband for her use. On October 28, 1887, the Panhandle National Bank instituted two suits in the county court of Wichita county, Texas, against S. S. Maddox, and in each suit caused a writ of attachment to issue against the property of S. S. Maddox; the return to such writs showing that they were levied upon an undivided one-half interest in the flock of goats, then numbering two thousand head, and by taking possession of the same. The evidence tended to show that in making the levy the defendant F. M. Davis took possession of the entire flock of goats, and kept the same until November 12, 1887, when he sold an undivided interest in the same, under an order of the county court, to the Panhandle National Bank for sixty dollars, and that, after the sale of the entire flock, was delivered to said bank. Said sale was made at public outcry, and Coulson gave public notice that he was the owner of the entire flock. The testimony tended to show that the goats were worth from one dollar to five dollars per head; that the yield of mohair was from one to three pounds per head, and was worth from twenty to forty cents per pound. The defendants introduced testimony tending to show that the original purchase of the flock of goats from Nelson was made by Coulson and S. S. Maddox, and that the conveyance to the same was made in the name of Coulson and Mrs. Maddox in order to defeat the creditors of S. S. Maddox, he being insolvent; and that S. S. Maddox paid one half of the money received by Nelson for the goats. The evidence also tended to show that Coulson and S. S. Maddox had joint possession of the goats when the writs of attachment were levied and before that time. The evidence also tended to show that the sheriff only levied on the undivided one-half interest in the goats claimed by Maddox, and only took possession of such undivided half interest. When the goats were sold the bank only purchased an undivided one-half interest in the flock, and took joint possession of the flock with Coulson, and never had or claimed the exclusive possession of the flock until the goats were purchased by the bank under the deeds of trust executed by Coulson and Bessie Maddox to Coffield to secure the sum due Nelson for the purchase money of the goats. The testimony tended to show that the deed from Bessie Maddox and her husband to J. C. Coulson, and dated October 21, 1887, and acknowledged October 31, 1887, was not in fact executed until long after the levy of the attachments, and that it was made to defraud the creditors of S. S. Maddox. January 16, 1887, Coulson and Bessie Maddox (her husband not joining) executed to Coffield two deeds of trust upon the flocks of goats to secure the Nelsons

in the payment of purchase money for the same; and, about $2,300 of said purchase money remaining unpaid, the trustee sold said goats on August 1, 1888, and the bank became the purchaser at the sum of $2,390, after which the bank claimed to be the owner of the entire flock, and sold the same. The deeds of trust under which the sale by the trustee, Coffield, was made, provides: 'And the said W. T. Coffield is hereby fully authorized and empowered to take possession of said goats, without process of law, and to sell the same to the highest bidder for cash at public vendue; said sale to be made at the courthouse door in Wichita Falls, or at the place where said goats may be located when said trustee takes possession of them by virtue hereof.' The proof was that the goats were sold at the courthouse door, and that, the goats being some distance in the country, to save the expense and trouble of moving them the trustee did not take them into possession, and they were not present when sold. The evidence also tended to show that the expenses of keeping and maintaining the goats by the plaintiff from January 16, 1886, until October 28, 1889, the time during which plaintiff had them in possession, exceeded the value of the mohair and increase of the flock, and that the expenses of keeping and maintaining said goats from the date of the sale of Maddox's interest under order of court, November 12, 1887, until the sale by the trustee, August 13, 1888, exceeded the value of mohair and increase of flock; and that from the fall of 1888, when the bank sold the goats after buying at trustee's sale, until the date of trial, June 9, 1892, the loss in the flock was greater than the increase, and the income from the mohair taken from the goats had not paid the expenses of keeping them. The evidence also tended to show that, after the levy on the sale of the Maddox interest in the goats, plaintiff, J. C. Coulson, intentionally and voluntarily abandoned the possession of his interest in said goats.

"In this condition of the proof, the plaintiff requested the court to instruct the jury as follows: 'If you find from the evidence that, at the date of the levy of the attachment, plaintiff and S. S. Maddox were joint owners of the goats, then you are instructed that the sheriff, in levying the attachment, was not authorized to take into his possession any part of said goats; and that the levy so made was illegal and void, and defendants can acquire no right under it;' but the court refused so to charge, but instructed the jury as follows: 'You are further instructed that the levy of the attachments introduced in evidence on the undivided one-half interest of S. S. Maddox in said goats, and the order of sale, and deed thereunder to the Panhandle National Bank, conveyed to said bank an undivided one-half interest of the goats in controversy, unless the deed of S. S. Maddox and his wife, Bessie, of their interest in the goats, dated October 21, 1887, and acknowledged October 31, 1887, conveyed their interest before the attachment was levied on October 28, 1887, to plaintiff, Coulson, or unless, under paragraph No. 8, hereinafter given, you find plaintiff had acquired the interest of Maddox and wife in said goats.' '(8) If you find that plaintiff, Coulson, had by verbal contract or assignment from S. S. Maddox, after the deed from Nelson to him and Bessie Maddox, acquired the title of Maddox and wife, and taken exclusive possession, through his agents, of the goats in controversy, and kept such exclusive possession until after the attachment of October 28, 1887, then he had title to all of said goats at the date of said levy. Or if you find under foregoing instructions that plaintiff acquired title to Maddox's one half of said goats under the deed from Maddox and wife, of October 21, 1887, then, no matter whether his title to the Maddox interest came to plaintiff in the one way or the other above indicated, you will find for plaintiff eight per cent. per annum interest on the value of one half of said goats from the date of said levy of said attachment to the date of the sale of said goats by the trustee, Coffield, on August 13, 1888; and the value of the goats upon which you allow interest should be, if you find for the plaintiff under this charge, the full one half of the goats, without reference to the mortgage to Coffield. (9) If you find from the evidence that at the date of the levy of attachment by the sheriff he took possession of all the goats and ousted the possession of the plaintiff, and would not permit plaintiff nor his agent to have any control over said goats, then you will find for plaintiff eight per cent. per annum interest on the full value of one half of said goats from the date of the levy of said attachment on October 28, 1887, to August 13, 1888, the date

said goats were sold under trust deed by Coffield.' The half of the goats referred to in this paragraph of the charge was the half recognized as plaintiff's by defendants, and not levied on. '(11) The deed from W. T. Coffield, as trustee, to the defendant bank, divested all interest of plaintiff in the goats in controversy and invested it in said bank at its date, to wit, on August 13, 1888.' "

The jury returned a verdict in favor of the plaintiff for the sum of $316.65. The plaintiff, not satisfied therewith, moved for a new trial, and, that being refused, brought the case to this court for review, assigning errors as follows:

"First. The court erred in holding that the levy of the writs of attachment upon an undivided one-half interest in the goats, by taking actual possession thereof, was valid; the said levy should have been made by serving notice of the writ upon the party in charge of the flock of goats, according to the laws of the state of Texas. Second. The court erred in holding that the measure of plaintiff's damage was 8 per cent. interest on the value of the goats unlawfully seized by the defendants, from the day of the seizure until they were sold under the deeds of trust executed by Coulson and Bessie Maddox. Third. The court erred in holding that the sale of the trustee, Coffield, divested the title to said goats out of the plaintiff, and vested the title in the defendant the Panhandle National Bank."

1. There was evidence tending to show that the plaintiff, Coulson, and S. S. Maddox were the joint owners and had joint possession of the flock of goats when the writs of attachment against Maddox were levied; that only the interest of Maddox was levied upon, and that the sheriff took possession only of the half interest belonging to Maddox. Article 167, Rev. St. Tex., provides that "the writ of attachment shall be levied in the same manner as is or may be the writ of execution upon similar property;" and article 2292 of the same Revised Statutes provides that "the levy upon personal property is made by taking possession thereof when the defendant in execution is entitled to possession. Where a defendant in execution has an interest in personal property, but is not entitled to the possession thereof, a levy is made thereon by giving notice thereof to the person who is entitled to the possession, or one of them where there are several." Under this state of the law, it was not error on the part of the court to refuse to instruct the jury:

"If you find from the evidence that, at the date of the levy of the attachment, plaintiff and S. S. Maddox were joint owners of the goats, then you are instructed that the sheriff, in levying the attachment, was not authorized to take into his possession any part of said goats, and that the levy so made was illegal and void, and defendants can acquire no right under it."

If Maddox was an owner and in possession, it seems clear to us that the proper method of making the levy was by taking possession,—the same possession that Maddox had and was entitled to. The sheriff could not have treated Maddox's ownership and possession as an interest merely, and, if he had so treated it, there was no other person than Maddox to serve with notice of seizure. Joint possession and ownership cannot be assimilated to an interest in property similar to a partnership interest, and therefore the authorities relied upon by plaintiff in error—Brown v. Bacon, 63 Tex. 597; Clagett v. Kilbourne, 1 Black, 346—do not apply.

2. The measure of damage for the unlawful seizure, without malice, of personal property, where the property is subsequently returned to the owner, is the difference between the value of the goods at the time and place of the unlawful taking and at the time and place where returned, in addition to the value of the use during the time of detention. Bates v. Clark, 95 U. S. 204; 3 Suth. Dam. p. 529. Damages resulting from deterioration in price in such cases should be specially pleaded. Harris v. Finberg, 46 Tex. 79. There is no evidence in this case tending to show that the flock of goats seized had any usable value other than that resulting from the clipping of mohair during the time elapsing between the seizure under the writs of attachment and the practical return of the flock to the plaintiff in error, and the evidence shows that this usable value was far short of paying the expense of keeping and maintaining the flock. There was no pleading charging, and no evidence tending to show, that the goats depreciated in value between the time they were seized under attachment and the time they were practically returned to the plaintiff in error. Under these circumstances, we are of the opinion that the charge of the court holding the measure of the plaintiff's damages at 8 per cent. interest on the value of the goats unlawfully seized, from the day of seizure until they were sold under the deeds of trust, need not be considered, for, if erroneous at all, it was not prejudicial to the plaintiff in error.

3. The third assignment of error is based on the charge of the court that the deed from W. T. Coffield, as trustee, to the defendant bank, divested all the interest of plaintiff in the goats in controversy and invested it in said bank at its date, to wit, on August 13, 1888; and said charge is here assigned as error; because it is said that the trustee, under the deed of trust, did not take actual possession of the flock of goats before proceeding to sell the same to the highest bidder for cash. The trust deed executed by the plaintiff, and under which the goats were sold to pay the plaintiff's debts, provided: "The said W. T. Coffield is hereby fully authorized and empowered to take possession of said goats without process of law, and to sell the same to the highest bidder for cash at public vendue;" and "said sale to be made at the courthouse door in Wichita Falls, or in the place where said goats may be located when the said trustee takes possession by virtue hereof." The proof was that the goats were sold at the courthouse door in Wichita Falls, and, to save expense and trouble of moving them, the trustee did not take them into possession, and they were not present when sold. There was no evidence tending to show that a fair price was not obtained at the sale, or that the plaintiff was in any wise damaged because of the failure of the trustee to take actual possession of the goats before making the sale. As a general rule, the power of sale given in a deed or mortgage must be strictly followed in all its details, in order to render the sale thereunder valid, (Perry, Trusts, § 602,) and where the power is that, in case of default in payment, the trustee may enter and take possession and sell, entry and possession are in general prerequisite to a valid sale. Id.; Roarty v. Mitchell,

7 Gray, 243. In our opinion, the failure on the part of the trustee, Coffield, to take possession of the goats before the sale was an irregularity which rendered the sale voidable, but not void, and, if this were an action brought to test the validity of said sale, the error assigned on the judge's charge would be sufficient to reverse the judgment. This, however, is an action brought to recover damages for an unlawful seizure, long prior to said sale, by the trustee, and the material question in the case with regard to the sale is not whether it was strictly regular, but whether it operated as a practical return of the property seized to the plaintiff. Inasmuch as thereby the property was directly applied to the plaintiff's use and benefit, it would seem immaterial in this action for damages for a prior seizure whether the goats were taken into possession by the trustee before the sale or not, for it is clear that on the day of sale they were practically returned to the plaintiff by and through the acts of his agent under a power previously granted. Besides this, the voidability of the sale in question can only be asserted in a direct action for the purpose, wherein plaintiff shall have offered to do equity with regard to the proceeds of the sale which have been applied to his use.

The errors assigned in this court, and called to our attention by the plaintiff in error, are not well taken. The judgment of the circuit court is affirmed, with costs.