Damron v. Sweetser, Caldwell & Co.

# ALMUS G. DAMRON ET AL.
## V.
## SWEETSER, CALDWELL & CO.

1. PRACTICE ACT—CONSTRUCTION OF STATUTE.—The court is of opinion that the true intent and meaning of section 2 of the Practice Act is that one or any number of defendants may be sued, either in the county where he or they reside, or where he or they may be found.

2. PLEADING—NON-JOINDER OF CO-DEFENDANT.—In an action *ex contractu*, the non-joinder of a co-defendant can be taken advantage of only by a plea of abatement. But where it appears on the face of the record that another joint obligor has not been joined, advantage may be taken of it, either by motion in arrest of judgment, or on error.

3. PARTIES.—Where it was claimed as an exception to the general rule, that if one of several co-contractors is resident out of the jurisdiction, all, or any of them may be sued, and the person or persons sued can not object to the non-joinder of their co-contractors. *Held*, that the expression, "resident out of the jurisdiction," contemplates the case of one who is resident in a sovereignty other than the sovereignty in which the tribunal implicated is located, and has power; and therefore, if the claimed exception were good, it does not apply in this case.

4. MEASURE OF DAMAGES—ATTACHMENT BOND.—The measure of damages to be recovered on the attachment bond is the actual expenses and loss resulting from the attachment, including counsel fees for professional services rendered in relation to the attachment, but not for attorney's fees paid in defense of the principal suit.

5. SAME—PERSONAL SERVICES.—The traveling expenses and hotel bills of appellee, incurred by him in coming to the trial, were proper to be considered in the assessment of damages for the wrongful suing out of the attachment; as to the matter of his personal services, it must be shown by the evidence that the loss of such services was an injury or detriment to the business of the firm.

6. WITNESSES—HOTEL BILLS, ETC.—Where there was no evidence in the record to show that the personal presence of appellees' witnesses was necessary, it was error to allow their traveling expenses and hotel bills in the assessment of damages.

APPEAL from the County Court of Saline county; the Hon. BOEN PHILLIPS, Judge, presiding. Opinion filed April 6, 1885.

Mr. JOHN M. LANSDEN, for appellants; that where there is more than one defendant the suit must be commenced in a

county in which some one resides, cited R. S., Practice Act, § 2; Hamilton v. Dewey, 22 Ill. 490; Semple v. Anderson, 4 Gilm. 546; Haddock v. Waterman, 11 Ill. 474; Linten v. Anglin, 12 Ill. 384.

As to damages on discharge of attachment: Patton v. Garrett, 37 Ark. 605; Hughes v. Brooks, 36 Tex. 379; Alexander v. Jacoby, 23 Ohio, 358; Bolling v. Tate, 63 Ala. 417; Transit Co. v. McCerren, 13 La. Ann. 214; Penny v. Taylor, 5 La. Ann. 714; Norton v. Cammack, 10 La. Ann. 10; Waples on Attachment and Garnishment, 447; Johnson v. Farmers Bk. 4 Bush (Ky.), 283.

Messrs. GREGG & PARISH, for appellees; as to damages, cited Drake on Attachment, 4th Ed. § 173; Bliss v. Heasty, 61 Ill. 338; Churchill v. Abraham, 22 Ill. 461; Burnap v. Wight, 14 Ill. 302.

As to pleading non-joinder of co-defendants: Dicey on Parties to Actions, 249–250.

BAKER, J.   On the second day of March, 1883, Charles O. Patier sued out, before a justice of the peace, in Johnson county, a writ of attachment against Sweetser, Caldwell & Co., appellees herein, who were residents of Evansville, Indiana. The writ, which was for $200, was not levied upon any property, but was served upon certain debtors of appellees as garnishees.   The judgment of the justice was against Patier, who thereupon appealed to the Johnson Circuit Court, where the case was tried *de novo* and with a like result.

The suit for now decision, was begun by appellees in the County Court of Saline county, upon the attachment bond given at the time the above mentioned attachment writ was issued. Patier was the principal, and appellants Almus G. Damron and Matthew Leftcovitch were securities on the bond; and they were all three made defendants in this suit.   There was service upon Damron and Leftcovitch in Saline county, and service was had upon Patier on a writ issued to Alexander county.   Pleas in abatement of the writs or to the jurisdiction of the court, were filed by each one of the defendants, respect-

Damron v. Sweetser, Caldwell & Co.

ively. These pleas stated the facts of service upon Damron and Leftcovitch in Saline county, and upon Patier in Alexander county, and further alleged Patier and Leftcovitch were residents of Alexander county, and Damron was a resident of Johnson county. Thereupon appellees dismissed their suit as to Patier, and demurred to the pleas of Leftcovitch and Damron, respectively, and such demurrers were sustained by the court. Appellants then pleaded to the merits of the cause. A trial resulted in a judgment in favor of appellees and against appellants, for $400 debt and $140.85 damages and costs.

The action of the court in sustaining demurrers to the pleas in abatement of Damron and Leftcovitch is assigned as error. The second section of the Practice Act provides that it shall not be lawful for any plaintiff to sue any defendant, out of the county where the latter resides or may be found, except in local actions, and except that in every species of personal actions in law, when there is more than one defendant, plaintiff commencing his action where either of them resides, may have his writ or writs issued, directed to any county or counties where the other defendants, or either of them, may be found. It is urged, that while this statute permits a sole defendant to be sued either in the county where he resides or in any county in which he may be found, yet that where there is more than one defendant the suit must be commenced in a county in which some one of them resides; and that had all three of the original defendants been found in Saline county, suit could not rightly have been commenced against them there, as no one of them resides in that county. We do not so understand the statute. One or any number of defendants, may be sued either in the county where he or they reside, or where he or they may be found. A statute must be interpreted according to its intent and meaning, and not always according to the letter. The first section of chapter 131 R. S., in express terms provides, that in the construction of the statutes, all general provisions, terms, phrases and expressions shall be liberally construed in order that the true intent and meaning of the legislature may be fully carried out, and

that words importing the singular number may extend and be applied to several persons or things. It would be absurd to hold, that when there are two or more defendants and both or all of them are found in a county where neither of them resides, then either one of them may be sued there, but not both or all. The residence of one or more of the defendants in the county where the suit is prosecuted, is only essential when process is to be sent to another county. In this case, the plea in abatement of Patier was a good plea, and it was admitted to be such by the dismissal of the suit as to him. The demurrers to the pleas in abatement of Damron and of Leftcovitch were properly sustained, as they were served with process in the county where the suit was pending.

But, it is further urged, the attachment bond is a joint and several contract; that the action should be against all three or some one of the obligors; and that the motion in arrest of judgment should have been sustained. We take it, that upon the dismissal as to Patier, the action stood upon the same footing it would have occupied had he not been made a party defendant in the first instance; and th t appellants might then have interposed a plea of non-joinder This was not done, and the general rule is that in an action *ex contractu* the non-joinder of a co-defendant can be taken advantage of only by a plea in abatement. But, in this case, the fact appears on the face of the declaration that Patier, as well as appellants, executed the bond, and that it is a joint and several bond. The rule is, that if such defect appears on the record, it may be availed of by motion in arrest of judgment or on error. 1 Chitty, Pl., 43 and 46. The case of Cummings v. The People, 50 Ill. 132, is directly in point, and in that case the court say: "Plaintiffs, by their own showing, inform the court there is another joint obligor, who has not been joined in the action; it was patent of record, and no plea was necessary to bring the fact before the court."

Appellees, however, suggest there are exceptions to the general rule that a defendant can plead the non-joinder of a co-defendant in abatement, and claim that one of these exceptions is where a co-contractor is resident out of the jurisdic-

tion. They claim Dicey on Parties, 249, 250, as authority for saying, that if one of several co-contractors is resident out of the jurisdiction, all or any of them may be sued, and the person or persons sued can not object to the non-joinder of their co-contractor; and further claim, that when the three pleas in abatement were filed, they showed on the record Patier was resident out of the jurisdiction, and that when he was dismissed from the suit the action properly proceeded against the other two. If, without examination as to its correctness, we admit the exception suggested as good law, yet it would seem to have no application in the case at bar. Jurisdiction, as intended by said exception, signifies the territorial limit within which power may be exercised. The tribunal in question, is the County Court of Saline county, and the residence of Patier is Alexander county, and both counties are but legal subdivisions of the sovereign State of Illinois. The process of said court can, in all proper cases, be issued to Alexander county, and have the same vitality and authority there, that it has in the county of Saline; a subpœna for a witness can thus be issued, or an execution on final judgment, or an attachment for contempt, or a capias for a defendant to an indictment or information, or a summons or a writ of attachment in a civil action, when such circumstances exist as by the law of the common sovereignty call upon the court to exercise the power and jurisdiction involved in the particular act to be done. We think the expression "resident out of the jurisdiction" as used in the statement of the claimed exception, contemplates the case of one who is resident in a sovereignty other than the sovereignty in which the tribunal implicated is located and has power.

The case, then, is not within the supposed exception to the general rule, and as it is patent upon the record the bond is joint and several, and the suit not against one obligor or all the obligors, but against an intermediate member, it follows, the court erred in overruling the motion in arrest of judgment.

The question which mainly constitutes the matter of differ-

ence between the parties, is as to the measure of damages in suit upon an attachment bond. The condition of the bond was to prosecute the suit with effect, or in case of failure' therein, to pay and satisfy such costs and such damages as appellees may sustain by reason of wrongfully suing out the attachment. The affidavit for attachment stated two facts: that appellees were indebted to Patier, and that they were non-residents of the State of Illinois. The truth of both these statements was essential in order to make the attachment rightful. Appellees admitted the fact of non-residence, but traversed the fact of indebtedness, and succeeded upon that issue in defeating both the suit and the attachment. In the case of Bliss et al. v. Heasty et al., 61 Ill. 338, the Supreme Court, in speaking of an attachment, say: "If nothing is due, plaintiff, undeniably, has wrongfully sued out the writ." See Drake on Attachment, section 173, to same effect. It follows then, from the result of Patier's suit, that his attachment was wrongfully sued out, and that there was a breach of the condition of the bond in that respect.

The Supreme Court of Indiana, in Wilson v. Root, 43 Ind. 486, held that when the action and the attachment have both been defeated, there having been no foundation for the action and consequently no right to sue out the attachment, there can be no distinction made between services rendered in the defense of the action and those rendered in defense of the attachment; and that the reasonable attorneys' fees of the defendant in the action in which the attachment was issued, for defending both the action and attachment, may be included in the damages allowed in a suit on the bond. The conclusion of the Supreme Court of Arkansas, in Patton v. Garrett, 37 Ark. 605, was directly to the contrary, and to the effect no attorneys' fees can be included in the assessment of damages. In Heath v. Lent, 1 Cal. 410, a like result was reached. The great weight of authority, however, seems to be in favor of a rule intermediate those announced in the cases above cited, and to the effect the measure of damages to be recovered on the attachment bond is the actual expenses and loss resulting from the levy of the attachment, including counsel fees for

professional services rendered in relation to the attachment, but not for attorneys' fees paid in defense of the principal suit. Transit Co. v. McCurren, La. Ann. 214; Phelps v. Coggshall, Ibid. 440; Johnson v. Farmers Bank, 4 Bush, 283; Tropnall v. McAfee, 3 Met. 34; Alexander v. Jacoby, 23 Ohio St. 358; Campbell v. Chamberlain, 10 Iowa, 337; Vorse v. Phillips, 37 Iowa, 428; Hughes v. Brooks, 36 Texas, 379. This rule, also, is in analogy with the rule as held in this State with reference to damages upon injunction bonds. In numerous actions on such bonds our courts have distinguished between the costs and expenses incurred in procuring a dissolution, and those incurred in defending against the chancery suit itself. It is urged, however, by appellees, that they were and are non-residents of the State, and consequently no personal service was or could be had on them; that the attachment proceedings afforded the only way of obtaining jurisdiction, and that but for the attachment writ which was wrongfully sued out, no occasion for employing counsel would have arisen, and no loss or expenses would have been occasioned. It may be answered, that Patier claimed, and believed he had, a valid and just demand against appellees, and *non constat* but that he would have brought suit against them in Evansville, Indiana, where they resided; the payment of attorneys' fees would have been necessary in any event, as he had the legal right, if done in good faith, to test the question of the validity of his claim against them, and there can be no presumption the charges for service rendered in Johnson county were greater than they would have been for services rendered at Evansville. The whole controversy was as to the indebtedness alone; and the evidence does not show the expenses for professional services were increased by reason of the service on the garnishees, or by reason of the locality in which the litigation was had. Our conclusion is, the attorneys' fees paid by appellees were not a proper element, under the circumstances of the case, to be considered in the assessments of damages on the bond.

F. D. Caldwell, one of the appellees, made a trip from Evansville to New Burnsides to attend the trial before the justice

of the place, and afterward made three trips to Vienna for a like purpose. It is fair to presume his personal attendance was necessary, and probably appellants would be estopped from claiming it was not. On each of these trips he was detained a number of days, and paid various sums for railroad fares and hotel bills; and his services during these times were lost to appellees in the transaction of the firm business in Evansville. It would seem these several items would be proper to be considered in the assessment of damages for the wrongful suing out of the attachment, with the qualification, as to the matter of the personal services of Caldwell, that it should be shown by the evidence the loss of such services was an injury or detriment to the business of the firm.

It also appears that Sontag and Brentano, residents of Evansville, were witnesses for appellees, and in attendance, as such, at the several trials. They made claim to the witness fees fixed by law, and the same have been paid by Patier. Besides this, their depositions might have been taken. The evidence shows that appellees paid said witnesses (in addition to the fees allowed by law) their hotel bills and traveling expenses, in order to secure their personal attendance at the trials. There is no testimony in the record to show the personal presence of said witnesses was necessary; and in its absence the amounts so paid were improperly allowed in the assessment of damages.

For the errors indicated the judgment is reversed and the cause remanded.

Reversed and remanded.