L. BUCKI & SON LUMBER CO. v. FIDELITY & DEPOSIT CO. OF
MARYLAND.

FIDELITY & DEPOSIT CO. OF MARYLAND v. L. BUCKI & SON
LUMBER CO.

(Circuit Court of Appeals, Fifth Circuit.   May 28, 1901.)

Nos. 925, 926.

1. ATTACHMENT—ACTION ON BOND—LAW GOVERNING MEASURE OF DAMAGES. .
    Attachment being a statutory remedy, the question of the measure of
    damages recoverable for breach of an attachment bond is one governed
    by the law of the state as expressed in its constitution and statutes. or
    declared by its highest court, and the law as so determined will be fol-
    lowed by the federal courts.
2. SAME—ATTORNEY'S FEES—FLORIDA STATUTE.
    Under the statute of Florida (Rev. St. 1892, § 1646) which requires
    attachment bonds to be conditioned to "pay all costs and damages the
    defendant may sustain in consequence of improperly suing out said at-
    tachment," and the decisions of the supreme court of the state thereon,
    reasonable attorney's fees expended by a defendant in procuring a dis-
    solution of an attachment, and aside from those expended for the trial
    of the main case, are recoverable as an element of damages in an action
    on the attachment bond.
3. SAME.
    Rev. St. Fla. § 1646, which requires attachment bonds to be conditioned
    to pay "all costs and damages" the defendant may sustain in conse-
    quence of the improper suing out of the attachment, prescribes no rule
    as to what shall constitute elements of the damages recoverable for the
    improper suing out of an attachment, but leaves such rule to be deter-
    mined as a matter of general law.   And, there having been no decision
    of the supreme court of the state establishing such rule prior to the
    time when a right of action accrued on an attachment bond, it is the
    duty of a federal court in which such action is brought to follow the
    decisions of the supreme court of the United States, under which attor-
    ney's fees expended by the defendant in the attachment suit in relation
    to the attachment cannot be recovered as elements of damages.   Per
    Shelby, Circuit Judge, dissenting.
4. SAME—COLLATERAL DAMAGES—LOSS OF PROFITS AND CREDIT.
    Under a statute which requires an attachment bond to be conditioned
    for the payment of "all costs and damages the defendant may sustain
    in consequence of improperly suing out said attachment," a surety on
    such a bond can only be held liable for such direct and actual damages
    as the defendant may have sustained by being deprived of his prop-
    erty, or the use thereof, or by its loss or injury, together with the tax-
    able costs and expenses incurred in relation to the attachment.   He is
    not liable for such collateral or consequential damages as could only
    be recovered from the plaintiff by proof of malice and want of probable
    cause;   such as loss of profits incident to the levy of the attachment, or
    injury to defendants' credit.   Per Shelby, Circuit Judge, dissenting.

In Error to the Circuit Court of the United States for the South-
ern District of Florida.

H. Bisbee, for L. Bucki & Son Lumber Co.

R. H. Liggett, for Fidelity & Deposit Co.

Before PARDEE, McCORMICK, and SHELBY, Circuit Judges.

McCORMICK, Circuit Judge.   The proceedings to review which
these writs of error were sued out were had in an action brought

by the L. Bucki & Son Lumber Company against the Fidelity & Deposit Company of Maryland on two attachment bonds given in two actions brought by the Atlantic Lumber Company on October 1, 1897, on which bonds the Fidelity & Deposit Company of Maryland bound itself as surety. The cases in which the bonds were given are sufficiently stated in the decisions of this court as reported in 35 C. C. A. 59, 92 Fed. 865–867, and 35 C. C. A. 590, 93 Fed. 765, 766. The purpose of this action on the bonds is to recover all costs and damages sustained by the plaintiff therein in consequence of the improper suing out of the writs of attachment in the cases in which the bonds were given, according to the condition of the bonds and of the statute requiring them. This action was brought in the state court, and removed to the United States circuit court by the defendant. The declaration consists of two counts. Each of these counts respectively sets forth the affidavit upon which the writ was issued, the bond, the writ, and a description of the property levied on, and alleges that for several years prior to and on the day the writs were levied the plaintiff had been engaged in doing, and was then engaged in doing, a prosperous business of manufacturing and selling hard pine timber and lumber; that the daily product of its mill was about 100,000 feet; that the interruption, suspension, and destruction of its business and credit in consequence of the attachments, and the costs, attorney's fees, and expenses incurred in preparing for and on the trial of the motions to dissolve the attachments, and other damages occasioned thereby, had damaged the plaintiff in stated large amounts; and that the damages sustained had not been paid. The defendant filed numerous pleas, all of which were disposed of on demurrer, except the plea of non damnificatus, and the issues raised by that plea were the only issues of fact tried by the jury. Among these issues of fact the court submitted to the jury the question of the amount of the reasonable attorney's fees which the plaintiff was entitled to recover in words and figures following, to wit:

"In making up your verdict you will find and assess the total amount of damages the plaintiff has sustained, exclusive of reasonable attorney's fees for services rendered by the plaintiff's attorneys in preparing for and on the trial of the motions to dissolve the two writs of attachment; and, in addition to the amount so found, you will also find and assess separately such sum of money as, upon the evidence, you believe to be a reasonable compensation for the services rendered by the plaintiff's attorneys in preparing for the trial and on the trial of the two motions to dissolve the attachments, and in resisting the efforts of the Atlantic Lumber Company to have the judgment dissolving such attachments reversed in the United States circuit court of appeals and in the supreme court of the United States. The court has prepared the form of your verdict as follows: 'We, the jury, find for the plaintiff, and assess its actual damages, exclusive of attorney's fees, at ———. And if the court be of the opinion that, as a matter of law, the plaintiff may recover for such attorney's fees, we further find for the plaintiff for the amount of ——— as a reasonable and just fee for the services proven.'"

Under the foregoing instruction, and other instructions which the court gave, the jury returned a verdict for the plaintiff, assessing its actual damages, exclusive of attorney's fees, at $10,880; and as to the attorney's fees the verdict proceeds in these words:

"And if the court be of the opinion that, as a matter of law, the plaintiff may recover for such attorney's fees, we further find for the plaintiff for the amount of $7,500 as a reasonable and just fee for the services proven."

On the return of this verdict the plaintiff moved the court to enter judgment in its favor against the defendant for the full amount thereof, including the sum of $7,500 as attorney's fees for services in obtaining a dissolution of the attachments. After due consideration of the matter, the circuit court refused to enter judgment on the verdict for $7,500 attorney's fees, and rendered its judgment in favor of the plaintiff and against the defendant for the sum of $10,895.04 damages, and for costs.

Each of the parties sued out a writ of error. Thirty-seven errors are assigned by the L. Bucki & Son Lumber Company on its writ of error, and 39 by the Fidelity & Deposit Company on its writ of error. The respective assignments together fill 27 pages of the printed records. Of these numerous errors thus elaborately assigned we deem it necessary to notice only one (the thirty-fifth) assigned by the Bucki Company. It is stated in these words:

"The court erred in excluding from the judgment the sum of $7,500 which the jury found specially in their verdict as a reasonable compensation for plaintiff's attorneys for services rendered on the trial of and preparing for the trial of the motion to dissolve the attachment. This was error on the following grounds, to wit: (1) Because the amount of reasonable attorney's fees was an element of damages sustained by the attachments; (2) because it was a question of local law, arising upon a statute of Florida authorizing the issue of attachments, and providing the condition of the bond upon which attachments can issue; (3) because the supreme court of Florida had previously decided that reasonable attorney's fees on such a motion are proper elements of damages, and such decisions of the supreme court of Florida were obligatory upon the federal court."

The statute of Florida which required the giving of the bond on which these actions are based fixes the condition of the bond as follows: "Conditioned to pay all costs and damages which the defendant may sustain in consequence of the plaintiff's improperly suing out said attachment." Rev. St. 1892, § 1646. The plaintiff in the attachments claimed in the aggregate, and in round numbers, the sum of $85,000, and the writs were so levied as, for a time at least, to stop the operations of a sawmill plant with a capacity of about 100,000 feet of sawed timber and lumber per day. The most vital feature of the levy was the placing of it on the accumulation of logs held on hand to meet the daily consumption of the mill. Of the gravest effect, but somewhat less than that of the levy on the logs, was the levy on the stock of sawed timber and lumber manufactured to meet current contracts. And a very serious effect on the business of the defendant in attachment was the levy of the writs (for so large a claimed indebtedness) on the real estate, including, as it did, the land and fixtures constituting the sawmill plant. The harshness of the use of the extraordinary process of attachment is recognized by the statutes of Florida, which provide that the court to which an attachment is returnable shall always be open for the purpose of hearing and deciding motions to dissolve it. Rev. St. 1892, § 1656. When an attachment is run on property necessary for the conduct of a going business, which

the levy of the attachment for the time being destroys or suspends, or seriously impedes, nothing can be more natural and urgent from a business point of view than the moving by the defendant in attachment for its dissolution. Such a motion, so urgent and essential, requires for its conduct the services of an attorney of ability and skill, whose reasonable compensation will be proportioned to the interests and questions involved. There could hardly be a more direct consequence of the levy of such a writ than this, and we concur in the earnest suggestion of the counsel for the plaintiff in error that the reasonable compensation to the attorney for presenting and conducting such a motion is as direct a consequence of the levy of the writ as is the cost of the filing of the motion to dissolve it.

It is stated by counsel that the learned judge who presided at the trial announced that the case of Oelrichs v. Spain, 15 Wall. 211, 21 L. Ed. 43, should be followed. That case has some historic interest on account of the subject-matter of the original bill, and the prominence of several of the actors in the transactions out of which the litigation grew. The immediate case was a suit in equity on a bond or bonds given to procure an injunction which restrained the defendant in the injunction proceedings from drawing money from the federal treasury until the further order of the court. In the case in which the bonds were given no motion was made to dissolve the injunction, and no professional services were rendered in obtaining its dissolution distinct from the services required in the conduct of the proceedings to the hearing and on the hearing of the bill on the merits. The writ was never dissolved until and except by the final decree. The payees in the bonds were largely successful on the merits. Counsel for the defendant in error, in his brief, makes this statement:

"In fifteen states and the territory of New Mexico attorney's fees are recoverable on attachment bonds; but in six of those, namely, Louisiana, Kentucky, Ohio, Illinois, Minnesota, and New York, they are not recoverable when the defense of the attachment proceedings involved the merits. In two of the states mentioned, namely, Washington and Iowa, the recovery of attorney's fees on attachment bonds is expressly provided for by statute, and the same may be true of some of the others."

Counsel for the plaintiff in error, in his brief, states:

"An examination of the text-books and digests of decisions will, we believe, establish that in thirty-eight states of the Union such fees are held a proper element of damages. In the other states the question is controlled by statute, or by antiquated views of public policy."

The plaintiff in error contends that in this case it is a question of local law; that it arises from the state statute, and could never have arisen if the statute had not required such a bond to be given. In the matter of injunctions to stay proceedings at law the Florida statute provides that, if the application be to stay the proceedings before verdict or inquest of damages, the applicant must enter into bond conditioned "to pay to the plaintiff all damages, losses, expenses, and charges which he may have sustained or have been put to by reason of the issuing of the injunction if the injunction shall be dissolved, or the bill upon which it was granted be dis-

missed," or, if the application be to stay the proceedings after ver-
dict or inquest of damages, "to pay the debt, interest enjoined,
and such damages as may be occasioned by the wrongful issuing
of the injunction if the injunction be dissolved, or the bill upon
which it was granted be dismissed." In Wittich v. O'Neal, 22 Fla.
592, the condition of the bond sued on was that, if the obligors
"shall pay to W. L. Wittich all damages he may sustain by the
issuing of the injunction in case the injunction be hereafter dis-
solved, then this obligation to be void." On that bond an injunc-
tion had been issued in a suit pending at the time of the execu-
tion of the bond between the surviving partners of the firm of Key-
ser, Judah & Co. and W. L. Wittich. This injunction was dissolved
by the judge of the court on the application of Wittich on the 6th
of April, 1881, and a final decree dismissing the bill was rendered
on the 9th of April, 1885. In a suit on the bond given to obtain the
temporary injunction, the question arose, and was fully considered,
"Are counsel fees, incurred to dissolve the injunction, damages that
may be recovered?" On that question the supreme court of Florida
said: "If the plaintiff was compelled to employ counsel to dissolve
the temporary injunction, it is clear that he was damaged to that
extent, and the question above mentioned arises as to whether
such damages are recoverable or not." The opinion then proceeds
to cite with emphatic approval the case of Ah Thaie v. Quan Wan,
3 Cal. 216, in which case the California court cited and followed
the decision of Chancellor Walworth in Edwards v. Bodine, 11
Paige, 224, 225. And the Florida court further say that the same
principle has been upheld in the following cases: Bank v. Heath,
45 N. H. 524; Collins v. Sinclair, 51 Ill. 328; Behrens v. McKenzie,
23 Iowa, 341; Reece v. Northway, 58 Iowa, 187, 12 N. W. 258;
Brown v. Jones, 5 Nev. 374, 377; Livingston v. Exum, 19 S. C. 223,
229; and add, "Many other cases might be cited to the same effect."
After referring to Oelrichs v. Spain, and quoting extensively the
language of the opinion in that case on the subject, the court refers
to Oliphint v. Mansfield, 36 Ark. 191, and Wood v. State (a then
recent case from the court of appeals of Maryland, announced July
15, 1886), 5 Atl. 476, and say that these cases are based on Oelrichs
v. Spain, and contain no argument or reasoning that is not found
in that case; and conclude their opinion on this subject in these
words:

"Against such an array and weight of authority as sustain the conclu-
sion of the court, as expressed in Ah Thaie v. Quan Wan, 3 Cal. 216, in favor
of the principle that attorney's fees are recoverable in a suit on an injunc-
tion bond, we are loath to follow the few authorities that hold the contrary,
in the absence of some controlling argument or reason that would convince
our judgments of the correctness of these conclusions. The reasons set
forth in Oelrichs v. Spain are, to our minds, not satisfactory, and we think
are fully answered in the brief of counsel for appellant."

The case of Gonzales v. Tobacco Co. (Fla.) 26 South. 1012, was
a writ of error taken from a judgment of the circuit court of Duval
county, Fla., rendered by a referee in an action at law to recover
damages upon an attachment bond executed by Gonzales and two
sureties, payable to the tobacco company, conditioned in accord-

ance with the requirements of the statute, to well and truly pay all costs and damages the defendant may sustain in consequence of improperly suing out a certain attachment against the goods and chattels of defendant in error by Gonzales. The declaration alleged the giving of the bond; the condition thereof; that the attachment was shown and proven to have been improperly sued out by the result of a trial had May 25, 1892, when Gonzales had to dismiss, and did dismiss, his suit on which the attachment was grafted, and with which it was connected,—a part and parcel thereof; and claimed as damages sustained in consequence of improperly suing out the attachment, among other things, certain sums for attorney's fees and costs and expenses incurred by defendant in error. Gonzales filed a plea in offset, alleging that the plaintiff was, before and at the time of the commencement of the suit, indebted to him in the sum of $562, together with interest thereon from June 30, 1891, "as follows," giving particulars. A demurrer to this plea was sustained. Other pleas were subsequently filed upon which issue was joined, one of which alleged that the attachment proceeding in which the bond sued upon was given was ancillary to a suit in assumpsit; that no trial was had as to the sufficiency of the attachment proceeding, but that all proceedings, attorney's fees, costs of court, fees of witnesses, etc., alleged in the declaration were had and incurred in and about the defense of the suit in assumpsit as to which the attachment was ancillary. The record did not show whether the principal suit was begun by the attachment, or whether the latter was sued out after the institution of the former. The writ was levied upon certain personal property belonging to the defendant in attachment, which remained in the hands of the officer for about 10 months, when, on motion of Gonzales, the plaintiff in the suit, the principal suit was dismissed, at his cost, with an order to the officer to deliver the attached property to the defendant in attachment. From the evidence it appeared that a motion to dissolve the attachment had been filed, but the grounds of this motion were not stated, nor did it appear that any expenses or attorney's fees were incurred in relation thereto. It did appear that the attachment was ipso facto dissolved by the dismissal of the principal suit, and that the dismissal of the latter was a voluntary act upon the part of the plaintiff in the suit. The referee found that the measure of damages to be recovered by the defendant in attachment was the interest on the value of the goods for the time they were in the custody of the sheriff (the goods not being materially damaged), and costs and expenses, including attorney's fees, of procuring a release of the property from the attachment. Several grounds of error were assigned, but the court did not deem it necessary to pass upon any of them except those relating to the rulings upon the demurrer to the plea of set-off and the motion for a new trial. As to the first it held that the set-off was not well pleaded. As to the second the court said:

"The motion for a new trial ought to have been granted. The only evidence relative to damages claimed on account of costs, expenses, and attorney's fees was the testimony of T. F. McGourin, a witness for defendant in

error [the tobacco company]. Upon his direct examination he was asked if the defendant in error had been to any cost and expense in direct consequence of the attachment and seizure of the goods. He replied affirmatively, and gave in detail the following items: Attorney's fees, $80; six depositions, at $5 each, $30; six witnesses, at $1.25 each, $7.50; Wolfe's expenses, $22; McCourin's expenses, $44; total, $183.50. On cross-examination this witness stated that the 'attorney's fees were paid in defense of the main case'; that the depositions were taken to cover testimony that was intended to be used at the hearing of the main case; 'that the expenses of Mr. Wolfe were incurred for his presence here [in Jacksonville] at the time of the main trial'; that 'those expenses were incurred at the time that the case was tried in which Mr. Gonzales was complainant and the De Funiak Tobacco Company was defendant, in which Mr. Gonzales claimed that an amount was due him on salary.' In answer to the question, 'This dismissal of the case was dated May 25, 1892. Were any of those costs incurred about that time?' he said: 'Yes, sir; I think they were all about that time. I think they were incurred by reason of that suit.' Although this witness stated upon direct examination, in a general way, that these fees and expenses were incurred in direct consequence of the attachment of the goods, his cross-examination explained what he meant by that statement, and developed the fact that they were all incurred in defense of the main suit, and not in any proceeding to test the propriety or procure the dissolution of the attachment, thereby fully establishing the truth of one of the pleas then in issue before the referee. There was nothing to contradict the testimony of this witness, and consequently no evidence upon which the referee could properly base a finding for these items. As his finding and judgment clearly embraces them, the motion for a new trial was well taken. * * * The condition of the bond is to 'pay all costs and damages the defendant may sustain in consequence of improperly suing out said attachment,' and this language will not admit of damages for expenses of defending the main suit. By the great weight of authority, while attorney's fees and other expenses incurred in relation to the attachment or in relation to procuring its dissolution will be allowed as damages in actions upon attachment bonds, the fees and expenses incurred in defending the principal suit cannot be allowed, in the absence of statute or a stipulation in the bond to that effect. Wittich v. O'Neal, 22 Fla. 592; Drake, Attachm. § 176; Sadler v. Bean, 38 Iowa, 684; Frost v. Jordan, 37 Minn. 544, 36 N. W. 713; Alexander v. Jacoby, 23 Ohio St. 358; Bank v. Wylie, 52 Hun, 146, 4 N. Y. Supp. 907; Damron v. Sweetser, 16 Ill. App. 339. * * * The judgment is reversed, and a new trial granted."

Referring to this case, the distinguished counsel for the defendant in error says:

"It appears from the decision that no motion to dissolve the attachment was made, and that it was only dissolved as a result of a judgment for the defendant in the main action, to which the attachment was ancillary, and it was on this ground that a right to recover the fees was denied."

After quoting the closing paragraph of the foregoing excerpt from the opinion, the able counsel says:

"It will be observed that the court viewed the subject of the allowance of attorney's fees as damages as a question of general jurisprudence, and as one that is to be construed by the rules of decision of the common law; and in this way the case affords light on the subject, and in this way only, for the question now under consideration was not before the court, and what was said on the subject was merely an expression of opinion as to the weight of authority."

The language just quoted suggests in a delicate and politic way that the question we are considering was not before the court, and that what was said on that subject was mere dictum. Section 1327 of the Revised Statutes of Florida provides that the judge of the supreme court of this state delivering the opinion of the court

shall prepare and make a syllabus or statement of the points and principles intended to be decided by the court, which shall be filed with the opinion, and published in the Reports at the beginning of the opinion, in lieu of that usually prepared by the reporter. In the report of this case the second paragraph of the syllabus is as follows:

"(2) Attorney's fees and other expenses incurred in relation to the attachment, or in procuring its dissolution, are properly allowed as elements of damage in an action upon attachment bonds; but fees and expenses incurred in defending the principal suit cannot be allowed, in the absence of statute or a stipulation in the bond to that effect. (Syllabus by the Court.)"

We do not overlook the case of Hart v. Stribling, 25 Fla. 435, 6 South. 455, in the report of which we find this in the syllabus:

"(1) Under the statute the judges of the supreme court of this state are required, in deciding cases, to prepare and make a syllabus of the points and principles intended to be decided by the court, which shall be published in the Reports, in lieu of that usually prepared by the reporter. But where a judge who writes the opinion of the court expresses a view upon any point or principle which he is not required to decide, his opinion as to such point or principle is obiter dictum, and it is binding on no one."

Perhaps an exhaustive practical judicial definition of the much-used and abused term "dictum" cannot be evolved from reported decisions of approved authority. But, accepting the definition expressed in the quotation just made from the syllabus in Hart v. Stribling as sufficient for our present discussion, we submit that it cannot fairly be contended that the judge who wrote the opinion of the court in Gonzales v. Tobacco Co., and who, in obedience to the requirement of the statute, prepared the syllabus of the principles intended to be decided by the court in that case, expressed a view upon any point or principle which he was not required to decide. The allegation in the declaration was sufficient to admit proof of fees paid to an attorney for his services in connection with the attachment and its dissolution, as distinguished from his services in connection with the action of assumpsit on which the attachment was grafted. And this allegation is aided by the plea of the defendant that the attachment was ancillary to a suit in assumpsit; that no trial was had as to the sufficiency of the attachment proceeding; and that all proceedings, costs of court, fees of witnesses, etc., alleged in the declaration, were had and incurred in and about the defense of the suit in assumpsit, to which the attachment was ancillary. The opinion puts emphasis on the fact that the only evidence relative to damages claimed on account of costs, expenses, and attorney's fees was the testimony of one witness for the defendant in error; and in another place says:

"There was nothing to contradict the testimony of this witness, and, consequently, no evidence upon which the referee could properly base a finding for these items. It does, however, clearly appear from the testimony of this one witness—and that, too, on his cross-examination—that there was a main trial of the case, and that this main trial took place, or at least terminated, on May 25, 1892, as alleged in the declaration."

It is also clear, from the opinion, that this issue as to attorney's fees, being a proper element of damages in the case, was the very

one on which the court decided to reverse the judgment and to grant a new trial. Preparatory to the new trial, the complainant, if he was so advised, could amend his declaration, and on the new trial additional testimony to that of the one witness examined on the first trial might be offered and admitted. It was, therefore, incumbent on the court to discuss this issue in the manner in which it did, and to announce the proper rule to be applied by the trial court on a second trial of the case. If the language of the opinion and of the syllabus on that subject is dictum, it is dictum of the highest grade, and of a grade so high that the line between it and authoritative decision is too shadowy to be discerned by average judicial acumen. "Attachment is essentially a creature of the written law. Hence but little assistance can be obtained in discussing this peculiar remedy by looking beyond the statute by which it is authorized. The force and effect of attachment laws can only be tested by the principles of statutory construction." 1 Wade, Attachm. § 2. "The natural result of the matters thus briefly noticed is to give this remedy a high practical importance, and to lead to a voluminous mass of judicial decisions, extending over a wider surface, and bringing into view a greater variety of legal doctrines than would be conjectured by those who have not examined the subject. In relation to it there can, in the nature of our institutions, be no uniform system of statute law; but, notwithstanding the inevitable diversity in this particular, there is a general unity of aim and result, so that principles and rules of identical import may be—and in numberless instances are—judicially established under statutes widely differing in details. Indeed, it may be questioned whether there is any other subject of equal extent in the administration of the law depending so entirely upon, and so exclusively regulated by, statutory provisions, that would exhibit less diversity of judicial decision than is connected with this." Drake, Attachm. (5th Ed.) § 8. "Questions of public policy, as affecting the liability for acts done, or upon contracts made and to be performed, within one of the states of the Union, when not controlled by the constitution, laws, or treaties of the United States, or by the principles of the commercial or mercantile law or of general jurisprudence of national or universal application, are governed by the law of the state as expressed in its own constitution and statutes, or declared by its highest court." Hartford Fire Ins. Co. v. Chicago, M. & St. P. Ry. Co., 175 U. S. 100, 20 Sup. Ct. 33, 44 L. Ed. 84. "In its nature this remedy is certainly anomalous. As it exists under the custom of London, it has hardly any feature of a common-law proceeding. * * * In these [just mentioned] and other respects the proceeding under the custom has an individuality entirely foreign to the common law. Its peculiar features have, in the main, been preserved in its more enlarged and diversified development in this country." Drake, Attachm. § 4. It has not been suggested, and cannot well be, that the questions we are discussing are controlled by the constitution, laws, or treaties of the United States, or by the principles of the commercial or mercantile law or of general jurisprudence of national or universal ap-

plication, and hence they are governed by the law of the state as expressed in its own constitution and statutes, or declared by its highest court. We therefore conclude that the judge of the circuit court erred in refusing to give judgment on that part of the verdict of the jury which reads: "And if the court be of the opinion that, as a matter of law, the plaintiff may recover for such attorney's fees, we further find for the plaintiff for the amount of $7,500 as a reasonable and just fee for the services proven;" and that the judgment, instead of being for only the sum of $10,895.04, should have been for the sum of $18,395.04; in which respect, and to which extent, we now amend the judgment of the circuit court by striking out the words "ten thousand eight," and inserting the words "eighteen thousand three."

These two writs of error were submitted together and argued together before us nearly a year ago (May 29, 1900), since which time we have held them under examination and advisement, and have given the numerous assignments of error careful and diligent consideration. We find that the action of the learned judge who presided at the trial in the circuit court is in several particulars subject to the criticism which is leveled at it by some of the other numerous assignments of error made by the plaintiffs in error on their respective writs; but, on the fullest consideration of the whole case, we conclude that the record presents no error on the part of the trial judge for which the judgment should be reversed, except the error that we have discussed, and its nature is such that we can and do correct it by amending the judgment as above indicated; and, thus disposing of both writs of error, the judgment of the circuit court is affirmed.

SHELBY, Circuit Judge (dissenting). This action was brought by the L. Bucki & Son Lumber Company, a corporation under the laws of New Jersey, against the Fidelity & Deposit Company of Maryland, a corporation under the laws of Maryland, to recover damages upon two attachment bonds executed by the latter company as surety. For brevity the former company will be called the "Bucki Company," and the latter the "Fidelity Company." A brief statement of the facts which led to and are involved in the litigation will be necessary: On the 1st day of October, 1897, the Atlantic Lumber Company sued out a writ of attachment for $9,980.80, and caused it to be levied on the lumber of the Bucki Company, consisting of about 1,250,000 feet. On the same date the Atlantic Lumber Company sued out another writ of attachment against the Bucki Company for $75,000, and caused it to be levied upon about 3,500,000 feet of timber and lumber and 3,000,000 feet of logs in a boom, and on the sawmill plant of the Bucki Company. The sheriff took possession of the personal property levied on. On the 11th day of October, 1897, the Bucki Company, by executing a forthcoming bond in accordance with section 1652 of the Revised Statutes of Florida, obtained possession of part of the personal property levied on, and on the 4th day of November, 1897, by the execution of a similar forthcoming bond, the Bucki Company obtained possession

of the remainder of the personal property levied on. The sheriff held the logs and lumber levied on from October 1 to October 11, 1897. The mill was run from October 11 to about November 16, 1897, during which time all of the logs were cut into timber and lumber, amounting to about 3,600,000 feet. The Bucki Company did not operate the mill after November 16, 1897. On motion of the Bucki Company the attachments were both dissolved, and the result of the litigation in the attachment suits showed that they were improperly issued.

Under the laws of Florida no attachments shall issue until the person applying for the same shall enter into bond, with sureties, payable to the defendant in at least double the debt or sum demanded, conditioned to pay all costs and damages which the defendant may sustain in consequence of the plaintiff's improperly suing out the attachment. Rev. St. § 1646. The bonds sued on in this action were given under that statute. The Fidelity Company is a surety on each of the bonds. Each bond has the condition prescribed by the statute "to pay all costs and damages" which the Bucki Company may sustain in consequence of it, the said Atlantic Lumber Company, "improperly suing out said attachment." The declaration recited the proceedings in the attachment cases, setting out the bonds and writs and levies, and claimed damages for the interruption, suspension, and destruction to the Bucki Company's business and credit in consequence of such attachments, and also claimed costs and attorney's fees and expenses incurred in preparing for and on the trial of the motions to dissolve the attachments. The case went to trial on the plea of non damnificatus, and much evidence was offered relating to the operations of the mill, the amount of lumber sawed, the amount sold, the prices received, and the profits made. Evidence was also offered as to the effect of the attachments upon the credit of the Bucki Company, and on the question as to whether its credit was good or bad prior to the attachments. Evidence was also offered as to reasonable attorney's fees for procuring the dissolution of the attachment. The Bucki Company requested the court to charge the jury that it was entitled in this action to recover for the injury to credit and loss of profits in its business. These requests were made in 16 separate charges, which were refused by the court, and the refusal of each is here assigned as error. Two of the requested charges presenting the questions are selected:

(1) "It is a question of fact for you to determine whether or not, if these attachments had not been issued and levied, the plaintiff would have been able to supply its mill with logs, and continued in its business and the amount of profits it would have made in such business in case said attachments had not been issued, provided you believe from the evidence that the direct consequences of such attachment caused the plaintiff to cease continuing in business, and that plaintiff would have and could have continued in business if such attachments had not been issued and levied and continued upon plaintiff's properties." (2) "If you believe from the evidence that the issuing and levying of these writs of attachment injured or impaired the credit or financial standing of the plaintiff as it existed on October 1, 1897, then the plaintiff is entitled to recover such damages for injury to its credit as you find from the evidence the plaintiff sustained as a direct

consequence of the issuing and levying of such writs upon the properties of the plaintiff."

The evidence tended to show that $7,500 would be a reasonable compensation for the attorney for procuring the dissolution of the attachments. The court refused to permit the attorney's fees to be estimated as a part of the damages, and the Bucki Company reserved an exception. There are other assignments of error by the Bucki Company, but those that are material raise questions that are involved in the assignments stated. The Fidelity Company also reserved a bill of exceptions. It assigns that the court erred in giving a number of charges relating to the business of the Bucki Company and its interruption by attachment. Two of those charges may be selected as presenting the questions involved:

(1) "Another element of damages claimed by the plaintiff is that the attachment interrupted its business, and by such interruptions, and the consequences thereof resulting from the attachments, the plaintiff was prevented from sawing and shipping lumber to certain parties in Baltimore, New York, and Boston, which plaintiff agreed to furnish prior to October 1, 1897; that such losses consist of certain amounts the purchasers of the lumber had to pay to supply what they had purchased of plaintiff. The court instructs you that the defendant is liable for all such losses, if any resulted as a direct consequence of the two attachments." (2) "You are the exclusive judges as to the facts of this cause. You are the exclusive judges of the amount of damages the plaintiff sustained as the direct and proximate consequence of the issuing and levying of these writs of attachment. These damages consist of two general consequences: First, all moneys paid out and all expenses incurred in and about and attending to the preparation of the trial of the motions to dissolve the attachments and on the trial of such motions which become reasonably necessary as a direct consequence of such attachment; second, all consequential damages,—that is, all damages caused by the interruption of the plaintiff's business, either by disabling the plaintiff from operating its mill or disabling it to deliver timber and lumber it had agreed to deliver prior to October 1, 1897,—if you believe from the evidence that the direct and proximate effect of such attachments caused such interruption of the plaintiff's business."

It is assigned here by the Fidelity Company that the court erred in giving the first charge above stated, and in giving the second part of the second charge above stated. There was a verdict and judgment for the Bucki Company against the Fidelity Company for $10,880 damages, exclusive of attorney's fees, and each party sued out a writ of error.

1. The question as to attorney's fees will be first considered. In addition to the general verdict for the plaintiff, the jury found a special verdict as to the amount of attorney's fees. They found that $7,500 would be reasonable and just as attorney's fees for the services rendered in procuring the dissolution of the attachments. The circuit court held that no judgment should be entered on this part of the verdict. The condition of the bond sued on is to pay "all costs and damages" which the defendant in the attachment suit may sustain in consequence of the attachment being improperly sued out. The word "costs," as used in the bond, refers, I think, to such costs as the defendant would have the right to have taxed in his favor in the attachment proceedings. The word refers to such sums as are prescribed by law as charges for the services enumerated in the fee bill or bill of costs. The word "damages"

means such damages as are legally recoverable. The question here is, of course, whether attorney's fees paid in securing the dissolution of the attachment constitute such damages. As early as 1796 a case came before the supreme court of the United States that involved the question as to whether counsel fees should be allowed as a part of the damages. The case is very briefly reported, and its nature does not fully appear. It does appear, however, that in estimating the damages the court below had allowed a charge of $1,600 for counsel fees, and the supreme court said that this ought not to be allowed. The general practice, the court said, in the United States, is in opposition to it; and the court added that, even if that practice were not strictly correct in principle, it is entitled to the respect of the court until it is changed or modified by statute. Arcambel v. Wiseman, 3 Dall. 306, 1 L. Ed. 613. In Day v. Woodworth, 13 How. 363, 14 L. Ed. 181, it was held that counsel fees ought not to be included in and allowed as damages in any action at law. In this case the court called attention to the fact that the courts of common law should have an established system of costs which are allowed to the successful party by way of amends for his expense and trouble in prosecuting his suit, and that the taxed costs are often far below the real expenses incurred by the litigant; and yet, the court added, it is all the law allows as expensa litis. Flanders v. Tweed, 15 Wall. 450, 21 L. Ed. 203, was an action to recover damages caused by the alleged unlawful seizure and detention of cotton. In the itemized statement of damages found by the jury, and allowed by the circuit court, was an item of $6,000 allowed as lawyer's fees. The supreme court held that the judgment should be reversed and modified by disallowing this sum. See, also, Insurance Co. v. Conard, Baldw. 138, Fed. Cas. No. 10,647. In The Nuestra Senora de Regla, 17 Wall. 29, 21 L. Ed. 596, counsel fees for $5,000 for defending against the illegal seizure and detention of a vessel were allowed by the lower court. The supreme court held "the allowance of counsel fees wholly unwarranted." The case of Bing Gee v. Ah Jim (C. C.) 7 Fed. 811, was a suit on an attachment bond. In that case the allegations concerning the expenses incurred in the employment of attorneys were, on motion of the defendants, stricken out of the complaint as immaterial. The case of Jacobus v. Bank (C. C.) 35 Fed. 395, was a suit for damages for wrongfully suing out an attachment. The court held, Judge Acheson delivering the opinion, that the plaintiff could not recover counsel fees paid in the attachment suit. This question, the court said, under the decisions of the supreme court of the United States, must be answered negatively; and some of the cases are cited to which I have already referred. It is true that in Sonneborn v. Stewart, 2 Woods, 599, Fed. Cas. No. 13,176, which was a suit for the malicious prosecution of a proceeding to have the plaintiff declared a bankrupt, Mr. Justice Bradley charged the jury that the plaintiff could recover his expenses for lawyer's fees in following up and setting aside the proceedings in bankruptcy. That case, however, was carried on writ of error to the supreme court of the United States, and there reversed. Counsel representing the plain-

tiff in error, as shown by the brief, argued that the fees expended by the plaintiff in prosecuting or defending his case could not be allowed as any part of the damages. The supreme court said:

"The fees of counsel in prosecuting this case were no part of the consequences naturally resulting from the action of the defendants in suing out the decree and warrant in bankruptcy. They were not what the defendants ought to have foreseen. That such fees are not recoverable, and why they are not, was clearly shown in Good v. Mylin, 8 Pa. 51."

Mr. Justice Bradley, who had presided on the trial in the lower court, dissented from the opinion of the court, remarking that the exception in regard to allowing fees in the suit by way of damages was not founded in truth. The court below, he said, expressly confined the jury to three specific grounds of damage, and this was not one of them. Stewart v. Sonneborn, 98 U. S. 187, 197, 25 L. Ed. 116. The case of Oelrichs v. Spain, 15 Wall. 211, 21 L. Ed. 43, is considered a leading case on this question. It involves the question of the assessment of damages upon the dissolution of an injunction. It was claimed that the enjoined party was entitled to include as damages the counsel fees paid in consequence of an injunction. The court commented on Arcambel v. Wiseman and Day v. Woodworth, supra, and then said:

"The point here in question has never been expressly decided by this court, but it is clearly within the reasoning of the case last referred to, and we think is substantially determined by that adjudication. In debt, covenant, and assumpsit damages are recovered, but counsel fees are never included. So, in equity cases, where tnere is no injunction bond, only the taxable costs are allowed to the complainants. The same rule is applied to the defendant, however unjust the litigation on the other side, and however large the expensa litis to which he may have been subjected. The parties in this respect are upon a footing of equality. There is no fixed standard by which the honorarium can be measured. Some counsel demand much more than others. Some clients are willing to pay more than others. More counsel may be employed than are necessary. When both client and counsel know that the fees are to be paid by the other party, there is danger of abuse. A reference to a master, or an issue to a jury, might be necessary to ascertain the proper amount, and this grafted litigation might possibly be more animated and protracted than that in the original cause. It would be an office of some delicacy on the part of the court to scale down the charges, as might sometimes be necessary. We think the principle of disallowance rests on a solid foundation, and that the opposite rule is forbidden by the analogies of the law and sound public policy."

These authorities seem conclusive of this question, looked at as a question of federal jurisprudence. It is urged, however, that this court should be governed by the statutes and decisions in Florida. We are not cited to any statute of Florida that establishes a rule of damages in cases like this so as to include attorney's fees. It is provided that an attachment shall not issue until the person applying for it gives a bond conditioned to pay all costs and damages which the defendant may sustain in consequence of the plaintiff's improperly suing out the attachment. Rev. St. 1892, § 1646. This statute creates no rule as to damages that would include counsel fees. It merely provides for the giving of a statutory recognizance, which is not the foundation of a right of action, but security only for the payment of damages. The damages referred to are such

as are legally recoverable. In Wittich v. O'Neal, 22 Fla. 592, the court held, in a suit on an injunction bond, that the counsel fees incurred by the defendant in the suit to dissolve such an injunction are damages that may be recovered. The conclusion of the court is sustained by the decisions of the courts of last resort in many of the states. The learned chief justice of Florida, who delivered the opinion of the court, admits that his conclusions are in direct conflict with the decision of the United States supreme court in Oelrichs v. Spain, 15 Wall. 211, 21 L. Ed. 43, and says: "The reasons set forth in Oelrichs v. Spain are, to our minds, not satisfactory, and we think are fully answered in the brief of counsel for appellant." I do not understand that this opinion is based upon the construction of a statute. The learned chief justice, as I understand it, is making the decision upon general principles. The decision involves the construction of the bond. The only Florida case to which our attention is called which involves a suit on an attachment bond is Gonzales v. Tobacco Co., 26 South. 1012. This case was decided December 6, 1899, which is subsequent to the date and alleged breach of the bond sued on in the case at bar. When the facts of the case are examined, it will be seen that it involved the allowance of attorney's fees to the amount of $80, which were paid in defense of the main case. The court held that such allowance was improper; that the condition of the bond to pay all costs and damages the defendant may sustain in consequence of improperly suing out the attachment will not admit of damages for the expense of defending the main suit. That disposed of the whole case before the court, so far as the question of attorney's fees is concerned. The court, however, added, by way of dictum, that by the great weight of authority attorney's fees incurred in relation to the attachment or in procuring its dissolution will be allowed as damages in actions upon attachment bonds. But, if this decision was in point, being rendered subsequent to the transactions involved in this suit, it would not be binding on this court. Burgess v. Seligman, 107 U. S. 20, 33, 2 Sup. Ct. 10, 27 L. Ed. 359; Bartholomew v. City of Austin, 29 C. C. A. 568, 85 Fed. 359. I do not find, from the examination of the authorities presented by counsel, or from my own investigation, that there are any statutes or decisions of the state of Florida that establish the rule that the plaintiff in a suit on an attachment bond can recover as a part of his damages counsel fees incurred in obtaining a dissolution of the attachment. As I do not find the law so established in the state of Florida, it is unnecessary to consider whether state decisions to that effect would be binding upon this court, or whether it would be the duty of this court to construe the bond, and follow the decisions of the supreme court of the United States. Olcott v. Supervisors, 16 Wall. 678, 688, 21 L. Ed. 382; Boyce v. Tabb, 18 Wall. 546, 21 L. Ed. 757; Foxcroft v. Mallett, 4 How. 353, 370, 11 L. Ed. 1008; Carroll v. Carroll's Lessee, 16 How. 275, 287, 14 L. Ed. 936; Swift v. Tyson, 16 Pet. 1, 19, 10 L. Ed. 865. Controlled by the decisions of the supreme court, I am constrained to dissent from the opinion just read, and to hold that the circuit court did not err in refusing to enter judgment on the special verdict. In 1796 the

supreme court suggested that, if the practice of refusing to allow attorney's fees as damages was not strictly correct in principle, it was entitled to respect until it was changed or modified by statute. Arcambel v. Wiseman, 3 Dall. 306, 1 L. Ed. 613. That remark surely cannot have less force now, when the rule appears to have been followed by the federal courts for more than a century.

2. The distinguished counsel for the Bucki Company says that "the court below refused to submit to the jury the question as to how much damages the plaintiff sustained by reason of losses by the interruption and destruction of its business caused by the attachment." After stating the grounds on which the court based its decision, the learned counsel adds, "This action of the court is assigned as error, and presents the leading and most important question for review in this court." The question, as presented by the evidence offered, the exceptions reserved, and the errors assigned, is naturally divided into two inquiries: (1) Is the Bucki Company entitled to recover for loss of profits caused by the attachment? (2) Is the Bucki Company entitled to recover for injury to its credit caused by the attachment? There is seemingly a great deal of conflict in authorities on these questions. The apparent conflict arises from decisions in jurisdictions controlled by varying statutes, and by the failure to note, in commentaries on them, the difference in the kinds of actions in which the damages are being adjusted. It is important at the outset, therefore, to keep in mind the nature of this suit. It is an action for breach of two attachment bonds. The suit is by the payee of the bonds—the defendant in the attachment suit—against the surety on the bonds. They are statutory bonds, their condition being fixed by statute. The condition of each bond is that the principal shall well and truly "pay all costs and damages" which the payee may sustain in consequence of the principal's "improperly suing out said attachment." The suit is not an action on the case against a plaintiff for maliciously suing out an attachment. In the latter case a very different rule as to damages prevails. There is no statute in the state of Florida which makes the obligors on an attachment bond liable in an action on the bond for such damages as the plaintiff is liable for in an action on the case for maliciously and vexatiously suing out an attachment. In states where there are such statutes, they control the decisions of the courts of the states as to the measure of damages. In some of the states the grounds on which an attachment is sued out cannot be traversed, but the defendant may at once sue for damages, and the obligors on the attachment bond are made liable, if the attachment was sued out maliciously, for such damages as the plaintiff in the attachment suit would be liable for in an action on the case for the malicious prosecution of the attachment. In Florida the defendant in the attachment suit may traverse the plaintiff's affidavit, and move to dissolve the attachment (Rev. St. § 1656), and on its dissolution may sue on the bond, and is entitled to recover only "all costs and damages" which it has sustained from the improper suing out of the attachment. There being no statute otherwise fixing the measure or kind of damages to be recovered, and the bond sued on conforming to the statute, we

are confronted with the questions: What damages can properly be included in the construction of the statute and bond? What damages were within the contemplation of the makers of the law and the parties to the contract? It cannot be held that the words "all damages" are used in their broadest sense. In some actions injury to the feelings are included and considered in establishing a plaintiff's damages, but it would not be claimed that a bond of this kind would include damages of that character. The defendant in attachment in some jurisdictions can sue the plaintiff in such suit in an action on the case, and, if it is proved that the attachment was vexatious and malicious, damages may be recovered for every kind of injury to credit, business, or feelings. To sustain such suit, malice upon the part of the defendant and want of probable cause for the attachment must both be proved. In a suit on the bond for actual damages, malice need not be shown, nor can the defendant defend by showing probable cause. Injuries that recovery could be had for only when malice exists and want of probable cause is shown cannot be considered or estimated as covered by the bond. The statute and bond could not be intended to cover damages that are allowed only in cases where malice and want of probable cause is shown, and at the same time dispense with the allegation and proof of malice, and cut off the defense of probable cause. In suits on the bond malice need not be proved. The existence of probable cause is no defense. The two suits for damages being so unlike in the issues raised and proof required, it may be expected that the rules as to the measure and proof of damages would be different. The legislature, in passing the act to require the bond, did not intend to impose on the sureties a liability as great as that imposed by law on the plaintiff in cases of malicious attachment. The condition of the bond is satisfied, and its terms substantially complied with, by awarding the plaintiff all costs and expenses incurred and caused by the attachment, and such damages as he may have sustained by being deprived of his property, or the use thereof, or any injury thereto, or its loss or destruction. The makers of the bond in an action on it are not liable for anything beyond such actual damages as are the direct result of the attachment.

The general principles controlling these questions seem to be clearly indicated in the opinions of the supreme court. In Watson v. Sutherland, 5 Wall. 74, 18 L. Ed. 580, the court incidentally discussed the question which is involved here. It was a suit in equity to enjoin a levy on a miscellaneous stock of goods. The injunction was resisted upon the ground that the defendant had an adequate and complete remedy at law. The court therefore considered the question as to what damages could be recovered at law for the seizure and sale of the goods. The court said it was well settled that "the measure of damages, if the property were not sold, could not extend beyond the injury done to it, or, if sold, to the value of it when taken, with interest from the time of the taking down to the trial." The court added: "Loss of trade, destruction of credit, and failure of business prospects are collateral or consequential damages, which it is claimed would result from the trespass, but

for which compensation cannot be awarded in a trial at law." North v. Peters, 138 U. S. 271, 281, 11 Sup. Ct. 346, 34 L. Ed. 936, is to the same effect. In the case of Vance v. W. A. Vandercook Co. (No. 2), 170 U. S. 468, 18 Sup. Ct. 645, 42 L. Ed. 1111, the court again had under discussion the question as to what damages could be recovered for the unlawful or illegal seizure of personal property. Mr. Justice White, delivering the opinion of the court, said:

"Under the decisions to which we have referred, it is evident that in the case at bar the measure of damages for the detention was interest on the value of the property from the time of the wrong complained of. This rule of damages has been held by this court to be the proper measure, even in an action of trespass for a seizure of personal property, where the facts connected with the seizure did not entitle the plaintiff to a recovery of exemplary damages. An action of this character was the case of Conard v. Insurance Co., 6 Pet. 262, 8 L. Ed. 392. In the course of the opinion there delivered by Mr. Justice Story, the court held that the trial judge did not err in giving to the jury the following instruction: 'The general rule of damage is the value of the property taken, with interest from the time of the taking down to the trial. This is generally considered as the extent of the damages sustained, and this is deemed legal compensation with reference solely to the injury done to the property taken, and not to any collateral or consequential damages resulting to the owner by the trespass.' Indeed, the same rule was, in effect, reiterated in Watson v. Sutherland, 5 Wall. 74, 79, 18 L. Ed. 580, where it was substantially held that 'loss of trade, destruction of credit, and failure of business prospects' could not be recovered in an action at law, where malice or bad faith was not an ingredient, because such damages were collateral or consequential, as regards a seizure of personal property, and could only be recovered at law where the issue of bad faith was involved. In other words, that, however at law such damages might be considered, when the suit was based upon a malicious trespass they were not a proximate result of an injury to property, caused by an illegal seizure thereof."

It follows, I think, that the Bucki Company is not entitled to recover in this action for the loss of profits in its business caused by the issuance and levy of the attachment, and that it cannot recover damages in this action for injury to its credit. Pettit v. Mercer, 8 B. Mon. 51; Weeks v. Prescott, 53 Vt. 57, 58; Braunsdorf v. Fellner, 76 Wis. 1, 3, 45 N. W. 97; Crockery Co. v. Haley, 6 Wash. 302, 33 Pac. 650, 653; Kirbs v. Provine, 78 Tex. 353, 14 S. W. 849; Sedg. Dam. (8th Ed.) § 127; Suth. Dam. (2d Ed.) § 55. So far as the levy on the real estate was concerned, it did not operate any change of possession (Rev. St. Fla. § 1651), or cause any damage (Trawick v. Martin-Brown Co., 79 Tex. 460, 14 S. W. 564; Brandon v. Allen, 28 La. Ann. 60). We have to deal with the measure of damages for the unlawful seizure, without malice, of personal property. Pardee, circuit judge, speaking for this court, said:

"The measure of damage for the unlawful seizure, without malice, of personal property, where the property is subsequently returned to the owner, is the difference between the value of the goods at the time and place of the unlawful taking and at the time and place where returned, in addition to the value of the use during the time of detention." Coulson v. Bank, 4 C. C. A. 616, 54 Fed. 855, 859.

The supreme court applied this rule in the case of a trespasser. Bates v. Clark, 95 U. S. 204, 24 L. Ed. 471. A surety on an attachment bond, with the condition as in this case, in the absence of

malice, should not be held to a harsher measure of damages than that applied to a naked trespasser.

I think that the charges given by the circuit court are not in conformity with the law as held by the supreme court, and that the assignments of error made by the Fidelity Company as to the charges quoted are well taken.